THE HONORABLE THOMAS O. RICE
HEARING DATE: March 12, 2018
WITHOUT ORAL ARGUMENT
MOVING PARTY

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **CHRISTOPHER A. SANTAMOUR and JOHN KELLY PEIGHTAL**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**UPS GROUND FREIGHT, INC.**, a Virginia Corporation,<br><br>Defendant. | Case No.: **2:17-CV-0196-TOR**<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: March 12, 2018<br>Without Oral Argument |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................. 1

III. PROCEDURAL BACKGROUND ....................................................................... 2

IV. THE PROPOSED SETTLEMENT TERMS ........................................................ 2

V. ARGUMENT ....................................................................................................... 3

    A. The Court Should Preliminarily Approve This Settlement Under FRCP 23(e). ............... 3

    B. The Class Satisfies the Requirements of FRCP 23 for Conditional Certification. ............................................................................................... 4

        1. FRCP 23(a) Requirements for Class Certification Have Been Met. .................... 4

        2. FRCP 23(b)(3) Requirements for Class Certification Have Been Met. ................ 5

    C. The Settlement is Fair, Reasonable, and Adequate. ............................................................. 6

        1. The Settlement Amount is a Fair Compromise in Light of Risks and Uncertainties. ........................................................................................... 7

        2. The Parties Sufficiently Investigated and Litigated this Matter to Allow Counsel and this Court to Conclude that the Settlement is Fair, Adequate, and Reasonable. ................................................................... 8

        3. The Settlement was the Product of Informed, Non-Collusive, and Arm's-Length Negotiations Between Experienced Counsel Whom Jointly Support the Settlement. ............................................................... 8

        4. The Proposed Notice Plan is Reasonable. ............................................................. 9

VI. REQUESTED ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS ARE FAIR AND REASONABLE. ............................................... 9

    A. The Class Representative Service Awards Are Reasonable. ........................................... 10

VII. THE COURT SHOULD APPOINT RUST CONSULTING, INC. AS SETTLEMENT ADMINISTRATOR ........................................................................... 10

VIII. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING. ............... 10

IX. CONCLUSION .................................................................................................. 10

**CASES**

*Amchem Prods., Inc. v. Windsor.*
   (U.S. 1997) 521 U.S. 591 ...................................................................................5

*Churchill Village, L.L.C. v. Gen. Elc.*
   (9th Cir. 2004) 361 F.3d 566 ..............................................................................6

*Demetrio v. Sakuma Bros. Farms, Inc.*
   (Wash. 2015) 183 Wn.2d 649 .............................................................................7

*Eisen v. Carlisle & Jacquelin*
   (U.S. 1974) 417 U.S. 156 ...................................................................................9

*Hanlon v. Chrysler Corp.*
   (9th Cir. 1998) 150 F.3d 637 ....................................................................4, 5, 6, 8

*Harris v. Marhoefer*
   (9th Cir. 1994) 24 F.3d 16 .................................................................................10

*Hughes v. Microsoft Corp.*
   (W.D. Wash. 2001) No. C98-1646C ..................................................................8

*In re Beef Indus. Antitrust Litig.*
   (9th Cir. 1998) 607 F.2d 167 ..............................................................................6

*In re Bluetooth Headset Products Liability Litig.*
   (9th Cir. 2011) 654 F.3d 935 ..............................................................................9

*In re Syncor ERISA Litig.*
   (9th Cir. 2008) 516 F.3d 1095 ............................................................................6

*Lewis v. Starbucks Corp.*
   (E.D. Cal. 2008) WL 4196690 ...........................................................................8

*Mercury Interactive Corp.*
   (E.D. Tex. 2002) 214 F.R.D. 424 .....................................................................10

*Mullane v. Cent. Hanover Bank & Trust Co.*
   (U.S. 1950) 339 U.S. 306 ...................................................................................9

*Officers for Justice v. Civil Serv. Comm'n*
   (9th Cir. 1979) 688 F.2d 615 ...........................................................................6, 8

*Phillips Petroleum Co. v. Shutts*
   (U.S. 1985) 472 U.S. 797 ...................................................................................9

*Rannis v. Recchia*
   (9th Cir. 2010) 380 F.App'x 646 .........................................................................4

*Silber v. Mabon*
   (9th Cir. 1994) 18 F.3d 1449 ..............................................................................9

*Wren v. RGIS Inventory Specialists*
  (N.D. Cal. April 1, 2011 No. C-06-05778 JCS) ................................................................ 6

**STATUTES**

29 U.S.C. §185 ............................................................................................................................. 7

Revised Code of Washington § 49.52.070 .................................................................................. 9

Revised Code of Washington § 49.52.050 .................................................................................. 1

Washington Annotated Code § 296-126-092 .............................................................................. 1

**RULES**

Federal Rules of Civil Procedure 23(a) .................................................................................. 4, 5

Federal Rules of Civil Procedure 23(b) .............................................................................. 4, 5, 6

Federal Rules of Civil Procedure 23(e) .............................................................................. 3, 4, 6

Federal Rules of Civil Procedure 23(h) ..................................................................................... 9

**TREATISES**

Federal Manual for Complex Litigation (4d ed. 2004) § 21.61 ................................................. 4

## I.  INTRODUCTION

Plaintiffs Christopher A. Santamour and John Kelly Peightal ("Plaintiffs") seek preliminary approval of a $305,834 non-reversionary class action settlement of wage and hour claims against Defendant UPS Ground Freight, Inc. ("Defendant" or "UPS"). This class action was brought on behalf of approximately 126 Washington State residents employed by Defendant as truck drivers paid on a per-mile piece rate basis from May 12, 2014 through February 3, 2018 ("Class Period") (hereinafter the "Class or "Class Members"). Plaintiffs allege that Defendant failed to pay hourly and separate wages for time spent on statutory rest periods (approximately 20 to 30 minutes per day) and apart from and in addition to the piece-rate pay in violation of the Washington Annotated Code ("WAC") 296-126-092(4) and willfully and intentionally withheld wages pursuant to RCW 49.52.050,070.

After significant informal discovery and a full-day mediation session, Plaintiffs and Defendant (the "Parties") agreed to settle this action for approximately 78% of the total amount owed (excluding liquidated damages). The Settlement Agreement ("S.A.") is attached as **Exhibit 1** to the Declaration of Craig J. Ackermann ("CJA Decl."), filed herewith. The proposed Settlement Agreement satisfies all the criteria for preliminary settlement approval under Federal Rule of Civil Procedure ("FRCP") 23 and is fair, adequate, and reasonable. Defendant does not oppose Plaintiffs' instant motion. Accordingly, Plaintiffs request that the Court grant preliminary approval of the proposed Settlement, conditionally certify the Class, appoint Plaintiffs and Plaintiffs' Counsel as Class Representatives and Class Counsel respectively, approve the proposed notice plan, and approve deductions from the Gross Settlement Amount ("GSA") pursuant to the Settlement.

## II.  FACTUAL BACKGROUND

UPS Ground Freight, Inc. is a Virginia corporation engaged in the business of freight delivery and operates out of several terminals in Washington. CJA Decl., ¶ 18.a. During the Class Period, Defendant employed approximately 126 per mile truck drivers in Washington to deliver freight. Id., ¶ 18.c. All of Defendant's piece-rate truck drivers in Washington are compensated on a "per-mile" piece-rate compensation system, with some accessorial pay, but with no separate and hourly pay for rest breaks. Id., ¶ 18.b-d. Plaintiffs and Class Members worked 12-14 hours per day (including sleeper berth time) and 5 days per week, therefore, they were entitled to at least two or three paid rest breaks per shift. Id., ¶ 18.e.

### III.   PROCEDURAL BACKGROUND

On May 12, 2017, Plaintiffs filed their class action Complaint in the Spokane County Superior Court, Case No. 17201766-8. On June 5, 2017, Defendant filed its Notice of Removal of the action to the United States District Court for the Eastern District of Washington. Id., ¶ 19. Plaintiffs and Defendant agreed to attend a private mediation to occur on November 9, 2017. The parties agreed to exchange informal discovery exchanges. On October 12, 20, and 25, 2017, Defendant's counsel provided Plaintiffs' counsel with sets of responsive documents and data including copies of (1) defendant's compensation and rest break policies; (2) information about the class size; (3) applicable collective bargaining agreements; (4) information about the total amount paid out in piece-rate wages during the Class Period; and (5) amount of piece-rate pay associated with sleeper berth time on team routes. Id., ¶ 20. On November 9, 2017, the parties participated in a full-day, private, arm's-length mediation with David A. Rotman serving as the neutral. In advance of the Mediation, the Parties each submitted detailed mediation briefs to Mr. Rotman. Class Members were represented by their counsel and Class Representatives, Defendant was represented by its counsel. Id., ¶ 21. At mediation, after non-collusive, arms' length bargaining, the parties reached a settlement in general terms and reduced the terms to writing in a Memorandum of Understanding, the terms of which are fully specified in the Settlement Agreement before this Court. Id., ¶ 22.

### IV.   THE PROPOSED SETTLEMENT TERMS

1. <u>Gross Settlement Amount</u> – Defendant will pay the non-reversionary amount of $305,834.00 inclusive of all payments set forth in the Settlement Agreement. S.A., ¶ 11. The Net Settlement Amount is the amount remaining of the GSA after deductions for attorneys' fees and costs, settlement administration costs, and Class Representative service awards, approximately $189,375.50. This amount will be distributed to Participating Class Members pro-rata based on Class Member's percentage of all piece-rate earnings during the Class Period. S.A., ¶ 12, 41.

2. <u>Class Definition</u> – All individuals who, during the Class Period, (a) resided in Washington State, (b) were employed by UPS Ground Freight, Inc., in the position of truck driver or any similar positions, (c) drove at least one route of three or more hours within Washington State, and (d) were paid on a "per-mile" basis by means of Mileage Pay. S.A., ¶ 21.

3. <u>Checks Cashed Process</u> – Settlement Class Members will not be required to file a claim to receive their share of the Net Settlement Amount ("NSA"). If any Class Members do not cash or

deposit their checks within the Check Cashing Period, any amounts associated with those uncashed checks will be sent by the Settlement Administrator to the State of Washington with the associated name of the Class Member pursuant to Washington's Unclaimed Property Act. If any Class Members opt-out of the Settlement, their portion of the Settlement shall remain with the NSA for distribution pro rata to the Participating Class Members. S.A., ¶¶ 50, 55. Class Members will have the opportunity to correct any errors in their piece-rate earnings used to calculate the settlement payment. S.A., ¶ 49.

4. <u>Class Counsel's Attorneys' Fees and Costs</u> – Plaintiffs' Counsel requests, and Defendant does not oppose, that the Court preliminarily approve their attorneys' fees in the amount of 25% of the GSA ($76,458.50) and litigation cost reimbursement for up to $10,000. S.A., ¶ 38.

5. <u>Class Representative Service Awards</u> – Plaintiffs request the Court preliminarily approve service awards of $7,500 for each of the Plaintiffs ($15,000 total). S.A., ¶ 39.

6. <u>Settlement Administration</u> – The Parties have selected Rust Consulting, Inc. ("Rust Consulting") to serve as the Settlement Administrator. S.A., ¶ 20. Rust Consulting has administered thousands of wage and hour settlements. See www.rustconsulting.com.

7. <u>Class Notice</u> – The proposed Class Settlement Notice explains the terms of the settlement and how to object and/or opt out. S.A., Exhibit A.

8. <u>Tax Consequences of Settlement Payments</u> – Seventy percent (70%) of every Individual Settlement Payment will represent wages, and will be reported on a W-2. The other thirty percent (30%) of every Individual Settlement Payment will represent non-wage payments, and will be reflected on a Form 1099. S.A., ¶ 42(b).

9. <u>Scope of Release and Final Judgment</u> – The release contemplated by the proposed Settlement corresponds to the Complaint, releasing claims arising from or based on Defendant's alleged failure to pay separately and hourly for rest breaks during the Class Period. S.A., ¶ 58. Plaintiffs will enter a general release in exchange for the Service Awards. S.A., ¶ 57. Upon final approval of the Settlement, the parties will submit a proposed final judgment. S.A., ¶ 69.

V. **ARGUMENT**

A. **The Court Should Preliminarily Approve This Settlement Under FRCP 23(e).**

A certified class action may not be dismissed, compromised or settled without approval of the Court. *See* FRCP 23(e). Proper review and approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement after submission of a written motion; (2)

3

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - CASE NO.: 2:17-CV-0196-TOR

dissemination of mailed and/or published notice of the settlement to all class members; and (3) a formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. *Manual for Complex Litigation* (4th ed. 2004), § 21.61. The decision to approve or reject a proposed settlement is committed to the sound discretion of the court and may be reversed only upon a strong showing of clear abuse of discretion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

FRCP 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified (FRCP 23(a) and (b); *Hanlon*, 150 F.3d at 1020); and (2) that the settlement is fair, reasonable, and adequate (FRCP 23(e)(2)). Here, both requirements for preliminary approval are satisfied.

**B.    The Class Satisfies the Requirements of FRCP 23 for Conditional Certification.**

FRCP 23(a) sets out prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. FRCP 23(a)(1)-(4). Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b)(3). These requirements are met.

    **1.    FRCP 23(a) Requirements for Class Certification Have Been Met.**

        **a.    The Class is Sufficiently Numerous.**

Numerosity demands that the class be large enough that joinder of all members be impracticable. FRCP 23(a)(1). Courts have routinely found numerosity satisfied with classes of at least forty (40) members. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Here, Defendant indicated that there are approximately 126 members of the Class. CJA Decl., ¶ 18.c.

        **b.    The Commonality Requirement is Satisfied.**

Commonality for class certification concerns the existence of questions of law and/or fact common to the class and is "construed permissively." *Hanlon*, 150 F.3d at 1019. The common questions here relate to Defendant's uniform policy and/or practice of compensating the Class by the piece and failing to pay Class Members separately and hourly for rest breaks. Id., ¶ 18.b, d.

4

### c. Plaintiffs' Claims Are Typical of Those of the Putative Class.

Typicality is met if the named Plaintiffs' claims "are reasonably co-extensive with those of absent class member; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here typicality is satisfied because Plaintiffs' claims are the same as claims brought by the Class – they were all employed as truck drivers, subject to the same compensation policies and procedures, allege that they incurred unpaid rest break wages, and seek the same type of relief. Id.

### d. Plaintiffs and Counsel Will Fairly and Adequately Represent the Class.

Adequacy permits class certification only if the "representative parties will fairly and adequately protect the interests of the class." FRCP 23(a)(4). This means that the proposed class representatives and their counsel cannot have conflicts of interest with the class and must vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020. Neither Plaintiffs nor their counsel have a conflict with any putative class member. CJA Decl., ¶ 3. In addition, Plaintiffs and their counsel have been actively involved in this litigation and have vigorously prosecuted the action. Id., ¶ 39. Plaintiffs' counsel has significant experience litigating wage and hour class actions and have been certified by numerous state and federal courts as competent, adequate class counsel. Id., ¶¶ 4-16.

### 2. FRCP 23(b)(3) Requirements for Class Certification Have Been Met.

Under Rule 23(b)(3), plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating controversy." The common questions raised in this action predominate over any individualized questions concerning the Class. Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In other words, courts must determine whether the focus of the proposed class action will be on the actions and conduct of the defendants rather than the behavior of individual class members. *Hanlon*, 150 F.3d at 1022-23. Here, the common questions of whether Defendant failed to pay Class Members separately and hourly for their rest breaks, and whether that failure violates the law, predominates over any potential individualized issues. CJA Decl., ¶ 18.b, d. Further, this class action would be a superior method of adjudication compared to a multitude of individual suits. To determine if the class approach is superior, courts consider: (1) the interest of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning controversy already commenced by or against members of the

class; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. FRCP 23(b)(3)(A)-(D). Here, a class action device is preferable because the Class Members do not have a strong interest in controlling their individual claims as the individual prosecution of the claims would be identical to and duplicative of the class action litigation. The use of the class action mechanism here would also efficiently resolve numerous identical claims at the same time while avoiding the waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation. Because there are no manageability issues presented by the resolution of the Class' identical claims under Washington state law, a class action is the superior method for adjudication the claims in this action.[1]

### C. The Settlement is Fair, Reasonable, and Adequate.

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In exercising their sound discretion to approve settlements, courts regularly consider whether the settlement is fair, non-collusive, and "all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179-80 (5th Cir. 1979). Included in this analysis are considerations of "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) citing *Hanlon*, 150 F.3d at 1026. Importantly, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. April 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Applying these factors to this case, the proposed settlement is fair, reasonable, and adequate.

---

[1] Courts have routinely certified similar claims in Washington State. *See e.g.*, *Mendis v. Schneider National Carriers, Inc.*, 2017 WL 497600, at *7 (W.D. Wash. Feb. 2, 2017) (order granting motion to certify identical claims to those asserted here for unpaid rest periods for truck drivers paid on a piece-rate basis); *see also Helde v. Knight Transportation*, 2015 WL 11216714, at *1–2 (W.D. Wash., Mar. 31, 2015) (Order Denying Motion to Decertify the Class with respect to claims for unpaid rest breaks for drivers paid by the mile with no separate and hourly pay for rest periods)

1. **The Settlement Amount is a Fair Compromise in Light of Risks and Uncertainties.**
   a.   **Plaintiffs' Claims**

Plaintiffs alleged that the Class were not separately compensated on an hourly basis for rest periods they took. CJA Decl., ¶¶ 18.d, 23. Plaintiffs calculated Defendant's maximum exposure for unpaid rest breaks as **$391,838.63**.[2] CJA Decl., ¶ 24.a. Plaintiffs alleged that if Defendant were to be held liable for double damages because Defendant willfully withheld wages, another **$391,838.63**. CJA Decl., ¶ 23, 24.b. Plaintiffs then calculated Defendant's interest liability at 12% per annum at **$101,878.04**. CJA Decl., ¶ 24.c. Plaintiffs estimated Defendant's <u>maximum exposure</u> for unpaid rest breaks as **$885,555.30** including double damages and interest. CJA Decl., at ¶ 25.

   b.   **Defendant's Defenses**

Defendant denied the allegations in the Complaint, and maintained that it could not be held liable for several reasons. CJA Decl., ¶ 26. These arguments included that *Demetrio* pertained strictly to agricultural workers; that Defendant encouraged drivers to take breaks and the breaks are accounted for in their pay scheme; that Plaintiffs' claims could be retroactively preempted by FAAAA preemption[3]; that union drivers claims are preempted by Section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §185; that Defendant could defeat class certification; that Plaintiffs are not entitled to double damages because there is a bona fide dispute over the employee's entitlement to wages; and that Plaintiffs would not be entitled to recover both double damages and prejudgment interest. CJA Decl., ¶¶ 27-35

   c.   **The GSA Represents 78% of Plaintiffs' Rest Break Damages**

The $305,834 GSA represents **78%** of Defendant's maximum exposure of $391,838.63 for unpaid rest breaks claims (excluding double damages and interest). Id., ¶ 37. Furthermore, the $305,834 GSA represents **34.5%** of Defendant's maximum exposure of $885,555.30 for all claims.

---

[2] Plaintiffs arrived at this number by calculating 4.35% of the Total Piece Rate Earnings earned by Washington resident drivers through October 7, 2017 and extrapolated the 4.35% figure through February 3, 2018 while taking an appropriate 50% discount to account for sleeper berth time on SLMP routes. Plaintiffs' use of 4.35 percent to calculate the rest break pay owed is based on the assumption that drivers worked at least eight hour shifts and were therefore entitled to at least two rest breaks (480 minutes per shift, less 20 minutes in missed rest breaks = 460 minutes. 20 / 460 = ~4.35%).

[3] The Federal Aviation Authorization Administration Act ("FAAAA") states that any local or state law that significantly impacts prices, routes or services of a motor carrier is preempted and null and void. The trucking industry believed, and has argued for many years, that the FAAAA preempted California's meal and rest break laws. Until several decisions issued in the past few years holding that the FAAAA does not preempt California state law regarding meal and rest breaks there was no clear authority that California law regarding rest break and wage/hour claims was applicable to employees in the motor carrier transportation industry. See *Dilts v. Penske Logistics, LLC et al.*, 769 F.3d 637 (9th Cir. July 9, 2014). The Supreme Court denied writ of certiorari in *Dilts*, ending the issue in the Courts. However, Defendant contended that *Dilts* does not address whether California state law is preempted by the Department of Transportation's regulations and/or the Commerce Clause, and that this question is undecided and ripe for appellate review. However, efforts have been underway to Congressionally overturn *Dilts*. Passage of such legislation would result in the class claims being wiped out entirely and the class members obtaining no recovery.

Id., ¶ 37. This analysis demonstrates that the settlement is fair, adequate and reasonable. Id., ¶ 38. Moreover, it is well established that settlement offers that constitute only a fraction of the potential recovery do not preclude a court from finding that the settlement offer is fair. *See Hanlon*, 150 F.3d at 1027; *Officers for Justice*, 688 F.2d at 628. Furthermore, the average estimated recovery per Class Member of $1,502.98[4] compares favorably with out settlements in similar cases.[5] CJA Decl., ¶ 36.

### 2. The Parties Sufficiently Investigated and Litigated this Matter to Allow Counsel and this Court to Conclude that the Settlement is Fair, Adequate, and Reasonable.

The Parties engaged in an exchange of significant and substantive information relating to Class Members' rest break claims as detailed above and were able to estimate class damages and assess the risks of further litigation. CJA Decl., ¶¶ 18, 24. It was only after the Parties thoroughly investigated and evaluated the strengths and weakness of the case, and attended a full-day mediation that the settlement was completed. Id., ¶¶ 21, 36. This is sufficient to support the Settlement. *See Lewis v. Starbucks Corp.*, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases").

### 3. The Settlement was the Product of Informed, Non-Collusive, and Arm's-Length Negotiations Between Experienced Counsel Whom Jointly Support the Settlement.

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining as it was here. *See Hughes v. Microsoft Corp.,* No. C98-1646C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery"). Here, the Settlement was a product of intensive, adversarial litigation between the Parties represented by skilled and experienced counsel after a full-day mediation session. CJA Decl., ¶¶ 4-16, 21. Notably, prior to the mediation The Parties ensured both sides were fully informed about the strengths and weaknesses of their respective positions. Id., ¶¶ 20-21. These factors support a finding

---

[4] $189,375.50 Net Settlement Amount / 126 Class Members = $1,502.98.
[5] In a similar case, *Dale McMakin, Jr. v. Domino's Pizza LLC*, King County Superior Court Case No. 16-2-20655-7 KNT, the Honorable Richard McDermott granted final approval to a settlement on behalf of a class of 45 truck drivers with similar claims on June 2, 2017 where the average settlement payment per Class Member was $1,481.83 and the highest estimated settlement payment was $3,156.49. Additionally, in *Aaron Lindholm v. Tate Transportation, Inc.*, Walla Walla County Superior Court Case No. 17-2-00013-3, the Honorable John W. Lohrmann granted final approval to a settlement on behalf of a class of 73 truck drivers with similar claims on June 29, 2017 where the average settlement payment per Class Member was $547.95 and the highest estimated settlement payment was $1,342.98. Lastly, in *Steven Eilerman v. McLane Company, Inc. dba McLane/Northwest*, United States District Court, Western District of Washington at Tacoma Case No. 3:16-CV-05303-BHS, the Honorable Benjamin H. Settle granted final approval to a settlement on behalf of a class of 251 truck drivers with similar claims on May 17, 2017 where the average settlement payment per Class Member was $1,914.53 and the highest estimated settlement payment was $4,659.54. CJA Decl., ¶ 36.

that the Settlement is fair, adequate, and reasonable.

### 4. The Proposed Notice Plan is Reasonable.

In order to protect the rights of absent class members, courts must provide the best notice practicable of a potential class action settlement. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). The Notice (Exhibit A to the Settlement Agreement) informs the Class Members about the terms of the Settlement, each Class Member's estimated individual settlement award, the procedure by which the Class Members may challenge the calculation, object to or opt out of the settlement, and the date and location of the final approval hearing. Accordingly, the Notice complies with the standards of reasonableness of a settlement notice disseminated under authority of the Court. In addition, the procedures surrounding the dissemination of the Notice ensure it will go out to Settlement Class Members in the manner best calculated to ensure that they are alerted to the terms of the Settlement and provided with the opportunity to respond to it. S.A., ¶¶ 44-46.

### VI. REQUESTED ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS ARE FAIR AND REASONABLE.

In class actions, the Court may award reasonable attorneys' fees and costs that are authorized by law or the parties' agreement. See FRCP 23(h). Here, Plaintiffs' counsel is entitled to recover their attorneys' fees and costs for their wage claims under Washington law. See RCW 49.46.090 (employee who recovers for violations of minimum wage is entitled to "costs and such reasonable attorney's fees as may be allowed by the court"); RCW 49.52.070 (employer who willfully withholds wages "shall be liable in a civil action . . . for twice the amount of wages unlawfully [withheld] . . . together with costs of suit and a reasonable sum for attorney's fees"). The fee award requested by Class Counsel is the product of an agreement reached through arm's-length bargaining, including the involvement of a mediator, by negotiating counsel experienced in similar litigation and is therefore fair and reasonable. CJA Decl., ¶¶ 17, 21-22. Further, Defendant does not oppose this request. S.A., ¶ 39.

Where counsel to a class action seek fees from the common fund, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset*

9

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - CASE NO.: 2:17-CV-0196-TOR

*Prods. Liab.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)). Plaintiffs' counsel's request for fees is reasonable under either analysis.[6] Here, Plaintiffs' Counsel seek an award of 25% of the common fund for their attorneys' fees – a percentage well within the range of approved fee awards by the courts. Id., ¶ 45.

Plaintiffs' Counsel further request reimbursement of litigation costs up to $10,000. "Attorneys may recover reasonable expenses that would typically be billed to paying clients in non- contingency matters." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). CJA Decl., ¶ 47.

### A.  The Class Representative Service Awards Are Reasonable.

Here, the proposed Service Awards of $7,500 to each of the Plaintiffs ($15,000 total) are in recognition of their substantial service to, and efforts on behalf of, the proposed Settlement Class. *See* Declaration of Christopher A. Santamour, ¶¶6-8 and Declaration of John Kelly Peightal, ¶¶4-6, filed herewith. The $7,500 Class Representative Service Award to each of the Plaintiffs compare favorably with other Class Representative Service Awards granted final approval. CJA Decl., ¶ 39. Defendant does not oppose this request. S.A., ¶ 41. The proposed Service Awards of $7,500 for each of the Plaintiffs are therefore fair and reasonable.

### VII.  THE COURT SHOULD APPOINT RUST CONSULTING, INC. AS SETTLEMENT ADMINISTRATOR

The parties propose that the Court appoint Rust Consulting to serve as the Settlement Administrator. CJA Decl., ¶ 48. Rust Consulting is experienced in administering class action settlements, and has estimated its fees for this settlement not to exceed $15,000. Id.

### VIII.  THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.

The last step in the approval process is the formal hearing, whereby proponents of the settlement may explain and describe its terms and conditions and offer argument in support of approval, and Class Members or their counsel may be heard in support of or in opposition to the settlement. The parties propose that the Court schedule final approval hearing of the settlement, including Plaintiffs' request for attorneys' fees, costs, and the service awards in May 2018.

### IX.  CONCLUSION

For the foregoing reasons, Plaintiffs respectively request that the Court grant their motion for preliminary approval of their class action settlement.

---

[6] Prior to final approval, Plaintiffs' counsel will file a separate motion for an award of attorneys' fees and costs, addressing in greater detail the facts and law supporting their fee request in light of all of the relevant facts.

10

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - CASE NO.: 2:17-CV-0196-TOR

1
2
3  Date: February 9, 2018
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully Submitted,

By: _____
INDIA LIN BODIEN, ATTORNEY AT LAW
India Lin Bodien, Bar No 44898
Attorney for Plaintiff
2522 North Proctor St. #387
Tacoma, WA 98406
P: (253) 212-7913
F: (253) 276-0081
india@indialinbodienlaw.com

ACKERMANN & TILAJEF, P.C.
Craig J. Ackerman, CA Bar No. 229832
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 277-0614
Facsimile: (310) 277-0635
cja@ackermanntilajef.com
*ADMITTED PRO HAC VICE*

# DECLARATION OF SERVICE

I, Amanda Lutsock, declare under penalty of perjury under the laws of the State of Washington that, on the 9th day of February, 2018, I caused to be delivered to the following addresses a copy of the forgoing Motion, accompanying Declarations of Craig Ackermann, John Kelly Peightal, and Christopher A. Santamour, along with the Proposed Order, to the Defendant UPS Ground Freight, Inc., in the manner indicated below:

Charles Ebernhardt, Esq.            [ ] By US MAIL
Chelsea Dwyer Petersen, Esq.        [ ] By Legal Messenger
Javier F. Garcia, Esq.              [ ] By Facsimile
Perkins Coie, LLP                   [X] By Email
1201 3rd Ave.
Seattle, WA 98101
cebernhardt@perkinscoie.com
cdpetersen@perkinscoie.com
jgarcia@perkinscoie.com
*Attorneys for Defendant*

Dated this 9th day of February, 2018, at Tacoma, Washington.

_____
Amanda Lutsock
*Legal Assistant*

12

PLAINTIFF'S UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT

INDIA LIN BODIEN, ATTORNEY AT LAW
2522 NORTH PROCTOR ST. #387, TACOMA, WA 98406
P: (253) 212-7913   F: (253) 276-0081
INDIA@INDIALINBODIENLAW.COM