THE HONORABLE THOMAS O. RICE
HEARING DATE: March 12, 2018
WITHOUT ORAL ARGUMENT
MOVING PARTY

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **CHRISTOPHER A. SANTAMOUR and JOHN KELLY PEIGHTAL**, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>**UPS GROUND FREIGHT, INC.**, a Virginia Corporation,<br><br>　　　　　Defendant. | Case No.: **2:17-CV-0196-TOR**<br><br>**DECLARATION OF CRAIG J. ACKERMANN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: March 12, 2018<br>Without Oral Argument |

## DECLARATION OF CRAIG ACKERMANN

### I.    INTRODUCTION

1.    I am an attorney admitted to practice law in the federal and state courts of California and Texas and on July 28, 2017 I was admitted pro hac vice as co-counsel of record for the class in this case, along with our local counsel and co-counsel, India Bodien, Esq. I am over 18 years of age. I have personal knowledge of the facts set forth in this declaration and if called upon to testify, could and would testify competently thereto.

2.    I am a founding shareholder in the law firm of Ackermann & Tilajef, P.C. ("A&T," "Co-Class Counsel" or "Plaintiffs' Counsel"), attorneys of record (along with India Lin Bodien) for Plaintiffs Christopher A. Santamour and John Kelly Peightal ("Plaintiffs" or "Class Representatives") and the proposed settlement class (the "Class") in the above-captioned matter. Through a contested but productive mediation, Plaintiffs and UPS Ground Freight, Inc. ("Defendant") (collectively, the "Parties") have entered into a Settlement Agreement resolving the claims of the putative class (the "Agreement").  The Agreement seeks to fully release and discharge Defendant from the claims brought against it in this matter. The Agreement contemplates a non-reversionary gross settlement amount of $305,834.00 ("GSA") by Defendant to the Settlement Class of approximately 126 current and former truck drivers employed by Defendant in Washington, which is inclusive of individual settlement amounts to settlement class members, attorneys' fees ("Class Counsel Fees Payment"), litigation costs ("Class Counsel Litigation Expenses Payment"), settlement administrative expenses, and the Class Representative Payments to the named Plaintiffs, to be approved by the Court. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit 1**. The proposed Class Notice and Share Form in Settlement are attached as **Exhibit A**, respectively, to the Settlement Agreement.  The Settlement Agreement, in its entirety, is incorporated herein by reference

3.    Moreover, I have no knowledge of the existence of any conflicting interests between my firm and any of its attorneys and our co-counsel, India Lin Bodien on the one hand, and Plaintiffs or any other Class Member, on the other

## II.    ATTORNEY EXPERIENCE

4.    My co-counsel and I are experienced in wage-and-hour class actions. Numerous state and federal courts have certified us as adequate and competent class counsel in such class actions, including many cases involving truck drivers.

5.    In 1994, I received a B.A. with honors and graduated Phi Beta Kappa from the University of Texas at Austin. In 1997, I received a J.D. from the University of Texas, School of Law. I became a member of the Bar of the State of Texas in 1997. I became a member of the Bar of the State of California in 2004.

6.    Since 1997, I have exclusively practiced employment law and have amassed a significant amount of experience in complex employment litigation. From 1997 through 2000, I was an associate in the labor and employment law group for Jenkens & Gilchrist, P.C. ("J&G"), in the firm's Dallas, Texas office, where I represented Fortune 1000 companies, including Hartford Insurance, Belo Corporation, and Alcatel, as second-chair in various employment-related matters, including several class action cases. While employed by J&G, I drafted a number of summary judgment motions in cases where we obtained summary judgment for the defendants, including several that were reported on Westlaw. *See Wayne v. The Dallas Morning News, Inc.*, CIV.A.No.3-98-CV-0711-L, 1999 WL 1146840 (N.D. Tex. Nov. 24, 1999) (with lead counsel, Robert E. Sheeder, Esq.); *Mieritz v. Hartford Fire Insurance Co.*, No. Civ.A.3:99-CV-121-R, 2000 WL 422909 (N.D. Tex. April 17, 2000) (with lead counsel Steve Fox, Esq.).

7.    From 2000 through mid-2003, I worked in New York City for a plaintiffs' side employment law firm, Arenson, Ditmar & Karban, where I was involved for several years, *pro hac vice*, in a second-chair capacity representing 150 individually-named plaintiffs in a large sexual harassment case against a major Wall Street bank that was eventually resolved for $23.5 million. In terms of the number of plaintiffs and the size of the ultimate settlement, this sexual harassment case was the second largest sexual harassment case in U.S. history. There were over 60 depositions taken and defended in that case prior to trial.

8.    In mid- and late-2003, I worked as an associate in the Labor and Employment Law

1    Section of Mitchell, Silberberg & Knupp, LLP in Los Angeles, where we represented large

2    entertainment companies in various employment-related litigations, including several class actions.

3        9.    From January 2004 through the present, I have been a founding and managing

4    shareholder in the firm of Ackermann & Tilajef, P.C. where we have represented thousands of

5    employees in wage and hour class actions, and other employment-related matters.  Ackermann &

6    Tilajef, P.C. has extensive experience in the litigation of complex cases, including numerous cases

7    where we have represented truck drivers in class actions.  For example, since 2009, we have

8    successfully obtained class certification and been appointed as adequate class counsel in a number

9    of cases where underlined contested class certification motions were filed and fully briefed. *See, e.g*., (1) Order

10   Adopting Findings and Recommendations, *Clayton v. Knight Transportation, Inc.*, No. 1:11cv0735

11   LJO DLB, 2012 WL 3638026 (E.D. Cal. Aug. 21, 2012) (Hon. Lawrence O'Neil) (Order adopting

12   findings and recommendations of Magistrate Beck); Findings and Recommendations Regarding

13   Plaintiff's Motion for Class Certification, *Clayton v. Knight Transportation, Inc.,* No. 1:11cv0735

14   LJO DLB, 2012 WL 2912395 (E.D. Cal. July 16, 2012) (U.S. Magistrate Judge Dennis L. Beck)

15   (recommending certification of class action for 2,000 truck drivers alleging claims for unpaid

16   orientation time); (2) *Jack Morrison v. Knight Transportation, Inc*., Tulare County Superior Court,

17   Case No. 228016, Nov. 13, 2009 Order Granting Plaintiff's Motion for Class Certification (Hon.

18   Lloyd Hicks) (granting certification of class of over 2,000 truck drivers with claims for missed

19   meal breaks premiums); (3) *Anderson v. Andrus Transportation*, San Bernardino County Superior

20   Court, Case No. CIV DS 915878, August 16, 2011 Order Granting In Part Plaintiff's Motion for

21   Class Certification (class certification granted to class of over 550 truck drivers with claims for

22   unpaid minimum wages and derivative claims); and (4) *Trujillo v. Winco Foods, LLC*, Stanislaus

23   County Superior Court, Case No. 622364, March 16, 2011 Order Granting Plaintiff's Motion for

24   Class Certification (granting class certification of missed meal and rest break claims and derivative

25   claims to class of 150 truck drivers).  In each of these cases, the trial court judges determined that I

26   and my firm were competent and adequate class counsel, or co-class counsel.

27       10.    Since 2004, our firm has also represented more than 250 individual employees in

28

1    cases brought under various state and federal statutes, including the California Labor Code, and we

2    have obtained favorable results in numerous cases. In December 2012, for example, we obtained a

3    Final Judgment in the amount of $318,913.09 in a Title VII and FEHA retaliation case after a

4    general jury verdict for the Plaintiff and a successful appeal to the Ninth Circuit from the district

5    court's denial of Plaintiff's motion for attorneys' fees. *See* Final Judgment, *Barrios v. Diamond*

6    *Contract Services, Inc.*, Case No. 2:07-cv-03500-CBM-FMO (C.D. Cal. Dec. 20, 2012), ECF No.

7    138 (final judgment entered for Plaintiff in the amount of $318,913.09); *see also Barrios v.*

8    *Diamond Contract Services, Inc.*, 461 F. App'x 571 (9th Cir. Dec. 13, 2011) (reversing original

9    district court judge's denial of motion for attorneys' fees).

10           11.    In addition, from 2009 through 2012, our firm was appointed class counsel and

11    obtained final approval of numerous wage and hour class action settlements for truck drivers. *See*

12    *e.g.,* Supplemental Order Granting Final Approval to Class Action Settlement, *Downs v. U.S.*

13    *Foodservice, Inc.*, Case No. 3:10-cv-02163-EMC (N.D. Cal. Sept. 11, 2012), ECF No. 84 (granting

14    approval to class action settlement for 1,100 truck drivers with meal and rest break claims;

15    Memorandum Decision Re Unopposed Motion for Final Approval of Class Action Settlement

16    (Doc. 41) and For Attorneys' Fees and Costs (Doc. 48), *Bond v. Ferguson Enterprises, Inc.*, NO.

17    1:09-cv-1662 OWW MJS, 2011 WL 2648879 (E.D. June 30, 2011) (granting approval to class

18    settlement for 553 truck drivers); Order Re Final Approval of Class Action Settlement, *Padilla v.*

19    *Young's Market Company, LLC*, Case No. 2:09-CV-08730 DMG (RCx) (C.D. Cal. Aug. 23, 2010),

20    ECF No. 53 (approving settlement of meal and rest break claims of 310 truck drivers); Order

21    Granting Plaintiffs' Motion for Final Approval of Class Action Settlement, Approving Service

22    Awards to the Class Representatives, and Granting Plaintiffs' Motion for Attorneys' Fees and

23    Costs, *Jape v. Southern Wine and Spirits of America, Inc.*, Case No. CV09-2599 SJO (FMOx)

24    (C.D. Cal. July 19, 2010), ECF No. 50 (granting final approval to settlement for 301 truck drivers);

25    Order Granting Plaintiffs' Motions for: (1) Final Approval of Class Action Settlement and Award

26    of Enhancement Fee to Class Representative; and (2) Reasonable Attorneys' Fees and

27    Reimbursement of Litigation Expenses and Costs to Class Counsel, *Valladares v. The SYGMA*

28

*Network, Inc.*, Los Angeles County Case No. BC 406053 (April 6, 2010) (granting final approval to wage and hour settlement for class of 515 truck drivers); Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement, *Valdez v. Sysco Food Services of Los Angeles, Inc.*, Los Angeles County Case No. BC396372 (Feb. 1, 2010) (granting final approval to missed meal break settlement for class of 480 truck drivers); Order (1) Granting Final Approval of Class Action Settlement; (2) Awarding Payment of Class Counsel's Attorneys' Fees, Expenses, and Costs; and (3) Awarding Participation, Service, and Incentive Payment to Class Representative From Settlement Fund, *Murray v. United Natural Foods, Inc.*, Placer County Sup. Court Case No. SCV21938 (Jan. 6, 2009) (granting final approval to settlement for 335 truck drivers).

12.     From 2012 through 2014, we represented plaintiffs in class action cases alleging claims for unreimbursed mileage expenses. On September 16, 2013, in the case of *Zotea v. Ross Stores, Inc.,* Alameda County Superior Court Case No. CV11592051, the Honorable Wynne Carvill appointed me as co-class counsel in conjunction with granting final approval to a settlement regarding the failure to reimburse mileage expenses on behalf of a class of retail supervisory employees. On November 1, 2013, in the case of *Grom v. The Men's Wearhouse, Inc.,* Sacramento Superior Court Case No. 34-2012-00117446, the Honorable Alan G. Perkins appointed me as co-class counsel in conjunction with granting final approval to a settlement regarding the failure to reimburse mileage expenses on behalf of a class of retail employees. On November 20, 2013, the Honorable Morris C. England, in conjunction with a Memorandum and Order granting Final Approval of a class action settlement for unreimbursed mileage expenses of supervisors of Best Buy LP, found that our firm was adequate class counsel in *Monterrubio v. Best Buy Stores, L.P.*, No. 2:11-cv-03270-MCE-AC (E.D. Cal. November 20, 2013). On June 30, 2014, in conjunction with the granting of final approval to a settlement regarding the failure to reimburse mileage expenses on behalf of a class of 1,400 current and former Assistant Managers, Store Managers, and Department Managers, the Honorable Jon S. Tigar approved me and Michael Malk as competent class counsel for the putative class in the case of *Boring v. Bed Bath and Beyond of California LLC*, Case No. 3:12-cv-05259-JST (N.D. Cal. June 30, 2014). On August 6, 2014, in conjunction

1   with the granting of final approval to a settlement regarding the failure to reimburse mileage

2   expenses on behalf of a class of thousands of assistant managers, the Honorable Phyllis J. Hamilton

3   approved me as competent class counsel for the putative class in the case of *Eichelberger and*

4   *Montellano v. Home Depot USA, Inc*., Case No. 4:13-cv-00260PJH (N.D. Cal. Aug. 6, 2014).

5       13.    From 2014 to 2016, our firm returned to representing truck drivers in wage and

6   hour class action cases.  Specifically, we began to file cases on behalf of truck drivers paid on a

7   piece-rate basis who were not paid separately and hourly for rest breaks, pre- and post-trip

8   inspection time and other non-driving time.  During this time frame, our firm has been appointed

9   competent Class counsel in more than 50 class action cases alleging piece-rate claims on behalf of

10  truck drivers in California, including the following cases: *See e.g., Harris v. Toyota Logistics*, Case

11  No. C1500217 (Contra Costa Sup. Ct. 2016) (finally approving a settlement of $550,000 to 76

12  drivers on February 10, 2016); *Velasco v. Knight Port Services*, LLC, Case No. CIVDS1513403

13  (San Bern. Sup. Ct. 2016) (finally approving a maximum settlement amount of $289,500 on May

14  12, 2016 on behalf of 228 drivers); *Morrison v. Knight Transportation, Inc.*, Case No. VCU228016

15  (Tulare Sup. Ct. 2015) (finally approving a settlement of $3.3 million, including fees awarded over

16  $1.15 million, to a class of 4,100+ drivers on December 15, 2015). More recently, our firm has

17  successfully obtained class certification in a number of wage and hour cases where contested class

18  certification motions were filed and fully briefed. On November 13, 2009, in the case of *Morrison*

19  *v. Knight Transportation, Inc.*, Tulare Superior Court Case No. 228016, the Honorable Lloyd Hicks

20  granted certification of a class of over 2,000 truck drivers with claims for missed meal breaks and

21  missed meal break premiums. On June 30, 2017, in the case of *Moss, et al. v. USF Reddaway, Inc.*,

22  United States District Court Central District of California Case No. ED CV15-01541 JAK (FFMx)

23  (Dkt. 43), the Honorable John A. Kronstadt granted in part Plaintiff's motion for class certification

24  on a contested motion.

25      14.    Our co-counsel, India Lin Bodien, has represented workers in Washington since

26  2013. Since becoming a solo practitioner in 2013, she has devoted a substantial percentage of her

27  practice to litigating wage and hour violations, the bulk of these being class actions. She has served

28

as local counsel and co-counsel on numerous wage and hour class actions and in individual discrimination claims. She has also worked on class action matters with A&T on a contract basis. A number of these class action cases were piece-rate wage claims brought by Washington truck drivers paid on a piece-rate basis, with facts similar to this Action. I have also served as co-counsel and local counsel on a number of class action cases brought on behalf of Washington farm workers paid on a piece-rate basis.

15.    Class Counsel have been appointed adequate class counsel in several recent class action cases in Washington State that were granted final approval including:

- *McMakin v. Dominos,* Order and Final Judgment Granting Final Approval of Class Action Settlement and Attorney's Fees and Costs, Case No. 16-2-20655-7, King Co. Sup. Crt. (June 2, 2017) (Judge Richard McDermott);
- *Eilerman, et al. v. McLane Company, Inc. DBA McLane/Northwest*, Order and Final Judgment Granting Final Approval of Class Action Settlement and Attorney's Fees and Costs, Case No. 3:16-cv-05303, U.S. Dist. Crt., Western Dist. Wash. (May 17, 2017) (Judge Benjamin H. Settle);
- *Asplund v. White Timber Industries, Inc.,* Order and Final Judgment Granting Final Approval of Class Action Settlement and Attorney's Fees and Costs, Case No. 16-2-00870-5, Wash. Sup. Ct. Cowlitz Cty. (September 13, 2017) (Judge Gary Bashor);
- *Lindholm v. Tate Transportation, Inc.,* Order and Final Judgement Granting Final Approval of Class Action Settlement and Attorney's Fees and Costs, Case No. 17-2-00013-3, Wash. Sup. Ct. Walla Walla Cty., (June 29, 2017) (Judge John W. Lohrmann);
- *Harris, et al. v. Jerry Debriae Logging Co., Inc.*, Order and Final Judgment Granting Final Approval of Class Action Settlement and Attorney's Fees and Costs, Case No. 16-2-00402-5, Wash. Sup. Ct. Cowlitz Cty. (June 7, 2017) (Judge Stephen M. Warning); and
- *Ramirez v. Valley Roz Orchards, LP*, Order and Final Judgment Granting Final Approval of Class Action Settlement and Attorney's Fees and Costs, Case No. 17-2-00221-39, Wash. Sup. Ct. Yakima Cty. (November 17, 2017) (Judge Michael McCarthy).

16.    Class Counsel is also serving as counsel on a number of pending wage and hour class action matters involving piece-rate workers in various counties in Washington State including:

- *Silva, et al. v. Washington Fruit Administrative Services II, Inc., et al.*, Case No. 17-2-00138-39 (Wash. Sup. Ct. Yakima Cty.) (co-class counsel with India Lin Bodien in a putative class action on behalf of approximately 9,451 agricultural workers);
- *Ramirez v. Gilbert Orchards, Inc.*, Case No. 17-2-00222-39 (Wash. Sup. Ct. Yakima Cty.) (co-class counsel with India Lin Bodien in a putative class action on behalf of approximately 2,487 agricultural workers);
- *Ramirez v. Wyckoff Farms, Incorporated*, Case No. 17-2-00224-39 (Wash. Sup. Ct. Yakima Cty.) (co-class counsel with India Lin Bodien in a putative class action on behalf of

8

approximately 3,812 agricultural workers);

- *Vilchis-Bautista v. Brewster Heights Packing & Orchards LP dba Gebbers Farms, et al.*, Case No. 17-2-00254-4 (Wash. Sup. Ct. Okanogan Cty.) (co-class counsel with India Lin Bodien in a putative class action on behalf of approximately 3,538 agricultural workers);
- *Kidwell, et al. v. Haney Truck LLC*, Case No. 16-2-04888-34 (Wash. Sup. Ct. Thurston Cty.) (co-class counsel with India Lin Bodien in a putative class action on behalf of approximately 447 truck drivers);
- *Tubbs v. SAIA Motor Freight Line, LLC*, Case No. 17-2-15258 KNT (Wash. Sup. Ct. Kent Cty.) (co-class counsel with India Lin Bodien in a putative class action on behalf of approximately 119 truck drivers);
- *Isidro v. Rowe Farms, Inc.*, Case No. 17-2-00137-39 (Wash. Sup. Ct. Yakima Cty.) (co-class counsel with India Lin Bodien in a putative class action on behalf of approximately 406 agricultural workers);
- *Perez-Hernandez v. Oasis Farms, Inc.*, Case No. 17-2-00749-5 (Wash. Sup. Ct. Benton Cty.) (co-class counsel with India Lin Bodien in a putative class action on behalf of approximately 1,191 agricultural workers);
- *Layton v. Heartland Express, Inc. of Iowa, et al.* Case No. 17-2-0067-0 KNT (Wash. Sup. Ct. King Cty. (co-class counsel with India Lin Bodien in a putative class action on behalf of approximately 527 truck drivers).

### III.  FACTUAL AND PROCEDURAL HISTORY

17.   The attorneys I supervise, and I, have performed substantial work and diligently investigated and prosecuted this case to a successful conclusion.  Our work, in conjunction with co-counsel, resulted in the creation of a significant settlement fund for the benefit of the Class. We avoided protracted litigation by conducting considerable investigation before filing suit related to the class claims, and efficiently communicated with Defense counsel such that the parties could successfully evaluate and settle the case.  Because of the risks involved in litigating this case and the contested legal and factual issues, Plaintiffs' Counsel believe this settlement to be fair, reasonable, and adequate.

18.   From Plaintiffs' investigation and analysis of information gathered both before and after initiating this claim, including conversations with Plaintiffs, Defendant's informal discovery production, Defendant's Notice of Removal, and other pleadings filed in this matter, Class Counsel learned the following information:

   a)   Defendant UPS Ground Freight, Inc. is a Virginia corporation engaged in the business of freight delivery worldwide, including in Washington State and the Pacific Northwest. Defendant operates out of several terminals in Seattle, Richland,

9

and Spokane, Washington.

b) All of Defendant's piece-rate truck drivers in Washington are compensated on a "per-mile" piece-rate compensation system.[1]

c) From March 12, 2014 through February 3, 2018 ("Class Period"), Defendant employed approximately 126 per mile truck drivers in Washington State ("Class Members") to deliver freight.

d) During the Class Period, Defendant compensated drivers based on a per mile piece-rate basis with some accessorial pay for certain specified things, such as customer downtime, layover pay, and worked performed at stops among other things, but with no separate and hourly pay for rest periods as explicitly required under the Washington Supreme Court's ruling in *Demetrio v. Sakuma Bros. Farms, Inc.*, that was published on July 16, 2015.

e) Plaintiffs and other Class Members typically worked 12-14 hours per day (including sleeper berth time) and 5 days per week, therefore they were entitled to at least two or three paid rest breaks per shift (one 10-minute rest break for each 4 hours of work).

f) Plaintiff has estimated The Total Piece Earnings earned by Class Members during the Class Period is approximately $11 million. Approximately $3 million earned by Washington resident, non-union drivers, and $8 million earned by Washington resident, union drivers.

19.    On May 12, 2017, Plaintiffs filed their class action Complaint in the Spokane County Superior Court alleging causes of action for Defendant's failure to pay hourly and separate wages for time spent on statutory rest periods apart from and in addition to their piece-rate pay. On June 5, 2017, Defendant filed its Notice of Removal of the action from the Spokane County

---

[1] As explained below, some members are part of a Collective Bargaining Agreement ("CBA")—and their compensation plans are set forth in the applicable CBA—while other class members are non-union drivers. However, the compensation plans for both union and non-union drivers did not provide for separate and hourly pay for piece-rate rest period time, so they are substantially similar if not identical with respect to the facts and the law at issue in this case.

DECLARATION OF CRAIG J. ACKERMANN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - CASE NO.: 2:17-CV-0196-TOR

1    Superior Court to the United States District Court for the Eastern District of Washington, where

2    the case was assigned to Chief Judge Thomas O. Rice on June 5, 2017. No motion to remand was

3    filed and the case remains pending in federal court.

4         20.     Plaintiffs and Defendant agreed to attend a private mediation to occur on

5    November 9, 2017. The parties agreed to exchange informal discovery requests. On October 12,

6    2017, after Plaintiffs' counsel sent a request for informal discovery to Defense counsel,

7    Defendant's counsel provided Plaintiffs' counsel with an initial set of responsive documents

8    including *inter alia*, Plaintiffs' personnel files; Plaintiffs' itemized wage statements; Plaintiffs'

9    driving logs; Defendant's preliminary class list of non-union drivers; and Defendant's Driver

10   Orientation Manual and Employee Reference Guide documents. On October 20, 2017,

11   Defendant's counsel provided Plaintiffs' counsel with a second set of response documents that

12   included an updated preliminary class list of non-union drivers; additional wage statements; a

13   randomized sample of fifteen non-union drivers' DOT driver logs; pay charts; and the National

14   Master UPS Freight Collective Bargaining Agreement through July 31, 2018. On October 25,

15   2017, Defendant's counsel provided Plaintiffs' counsel with updated preliminary class list of non-

16   union drivers, a class list of all union drivers, payout charts, and pay rate charts for the Class

17   Period.

18        21.     On November 9, 2017, the parties participated in a full-day, private, arm's-length

19   mediation in San Francisco, California with David A. Rotman serving as the neutral. Mr. Rotman

20   is an experienced class action mediator, with extensive knowledge of wage and hour laws. In

21   advance of the Mediation, the Parties each submitted detailed mediation briefs to Mr. Rotman.

22   Class Members were represented by their counsel and Class Representatives, Defendant was

23   represented by its counsel.

24        22.     After intensive arm's-length negotiations, the parties reached a settlement in

25   general terms and reduced the terms to writing in a Memorandum of Understanding ("MOU") that

26   was fully executed. The terms of the MOU are fully specified in the Settlement Agreement before

27   this Court.

28

DECLARATION OF CRAIG J. ACKERMANN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - CASE NO.: 2:17-CV-0196-TOR

*Plaintiffs' Allegations and Estimated Damages*

23.     In their Complaint, Plaintiffs alleged that Defendant failed to pay hourly and separate wages for time spent on statutory rest periods and apart from and in addition to the piece-rate pay in violation of WAC 296-126-092(4). In addition to unpaid rest break pay, Plaintiff alleged that Defendant was liable for double damages for its willful and intentional withholding of wages pursuant to RCW 49.52.050,070. Under Washington law, "[e]mployees shall be allowed a rest period of not less than 10 minutes, on the employers' time, for each 4 hours of working time." WAC 296-126-092(4). If an employee works more than eight hours in a day, he or she is entitled to two rest periods since "[n]o employee shall be required to work more than three hours without a rest period." Id. In *Wingert v. Yellow Freight Systems, Inc.*, 146 Wash. 2d at 848, the Washington Supreme Court held that the statutory provision, "on the employer's time," means that an employer must compensate employees hourly and separately for their time spent taking rest periods authorized under Washington Law." In *Demetrio v. Sakuma Bros. Farms, Inc.*, 183 Wash. 2d at 659, the Washington Supreme Court confirmed that an employer's obligation to pay wages for rest periods extends to piece-rate workers, obligating employers to pay piece-rate workers hourly and separately apart from the piece for rest breaks under WAC 296-126-092(4). *Demetrio v. Sakuma Bros. Farms, Inc.*, 183 Wash. 2d 649, 657 (2015). Therefore, Plaintiffs alleged that Defendant owed him, and other Class Members, separate and hourly pay for their statutory rest breaks. Plaintiffs also alleged that Defendant is liable for double damages under RCW 49.52.070[2] because Defendant violated 49.52.050(2)[3] by willfully withholding wages. The *Wingert* Court held that "an employer's nonpayment of wages is willful and made with intent 'when it is the result of knowing and intentional action and not the result of a bona fide dispute as to the obligation of payment.'" *Id.* at 849 (citing *Chelan County Sheriff's Ass'n v. Chelan County*, 109

---

[2] "Any employer … who shall violate any of the provisions of RCW 49.52.050 (1) and (2) shall be liable in a civil action by the aggrieved employee … for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees."

[3] "Any employer …who…[w]illfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract… Shall be guilty of a misdemeanor."

Wash.2d 282, 300 (1987)). Plaintiffs alleged that Defendant's failure to pay for rest breaks was knowing and intentional - at least since July 15, 2015, when the Washington Supreme Court explicitly held in *Demetrio v. Sakuma Bros. Farms Inc.* that piece-rate workers must be paid separately for rest breaks. Even prior to July 15, 2015, Plaintiffs argued that there was no bona fide dispute as to rest break pay because the "only reasonable interpretation" for the applicable regulation, WAC 296-131-020(2), "requires pay [for rest breaks] separate from the piece rate." *Demetrio*, 183 Wash. 2d at 656.

24.    Based on the information provided by Defendant, Plaintiffs estimated class wide damages as follows:

a.    Defendant's maximum exposure for unpaid rest breaks through February 3, 2018 is **$391,838.63**. Plaintiffs calculated this figure as follows:

i.    Defendant's drivers were SLMP drivers (two-driver routes) and FDMP drivers (single-driver routes).

ii.    The Total Piece Earnings split between SLMP and FDMP through October 7, 2017 is $5,297,897.64 and $5,744,668.82 respectively.

iii.    Plaintiffs calculated the rest break pay owed by multiplying the Total Piece Earnings by a figure of 4.35%.[4]

iv.    A review of driver logs establishes that the average ratio of driving time to sleeper berth time on SLMP routes is close to 50:50. Therefore, prior to multiplying the Total Piece Earnings for SLMP drivers, Plaintiffs took a 50% discount on the Total Piece Earnings because the Parties reasoned that rest breaks aren't required for sleep time.

v.    The total rest break pay owed to SLMP driver is $115,229.27 ($5,297,897.64 * 50% * 4.35%).

vi.    The total rest break pay owed to FDMP drivers is $249,893.09

---

[4] Plaintiffs' use of 4.35 percent to calculate the rest break pay owed is based on the assumption that drivers worked at least eight hour shifts and were therefore entitled to at least two rest breaks (480 minutes per shift, less 20 minutes in missed rest breaks = 460 minutes. 20 / 460 = ~4.35%).

1                                   ($5,744,668.82 * 4.35%).

2              vii.   The total rest break pay owed to drivers is therefore, $365,122.36. Plaintiffs

3                     extrapolated the total rest break pay owed to drivers through January 7, 2018

4                     at $391,838.63.[5]

5           b.    Plaintiffs estimated Defendant's liability for double damages as

6 **$391,838.63.** Plaintiffs simply doubled the total amount of unpaid rest breaks to arrive at the

7 amount of double damages.

8           c.    Plaintiffs estimated Defendant's interest liability at **$101,878.04** calculating

9 interest at 12% annually.

10     25.    Thus, Plaintiffs calculated Defendant's liability for rest breaks at **$391,838.63** and

11 **$885,555.30** for rest breaks plus double damages and interest.

12     ***Defendant's Defenses***

13     26.    Following its receipt of the Complaint, Defendant denied the allegations in the

14 Complaint, and maintained that it could not be held be held liable for the reasons discussed in

15 detail below. These arguments drastically reduced Defendant's liability in this case.

16     ***Legal Standard Defense***

17     27.    Defendant claimed that Plaintiffs reliance on *Demetrio v. Sakuma Bros, Inc.*, 183

18 Wn. 2d 649 (2015) is unfounded because *Demetrio* construed a different regulation (WAC 296-

19 131-020(2)), that pertains strictly to agricultural workers requiring employers to separately pay

20 piece rate workers for rest breaks to which they are entitled *Id.* at 654. While a federal district

21 court in an unpublished opinion subsequently extended *Demetrio* to other piece rate workers

22 whose rest periods are governed by WAC 296-126-092(4), holding that those piece rate workers

23 must be separately compensated for rest breaks. *See Helde v. Knight Transportation, Inc.*, No.

24

25    _____

[5] $391,838.63 is the extrapolated rest break pay owed through February 3, 2018. $391,838.63 is calculated as follows:
26 Defendant's counsel represented that its total piece earnings calculations for union and non-union drivers included May
12, 2014 through October 7, 2017, which is approximately a 41-month time period. $365,122.36 (rest break pay owed
27 through October 7, 2017 using the 4.35% calculation of total piece earnings) divided by 41 months = $8,905.42 of rest
break paid owed per month. $8,905.42 multiplied by 3 additional months (the timeframe between October 7, 2017 and
28 February 3, 2018) = $26,716.27. $365,122.36 + $26,716.27 = $391,838.63.

C12-0904RSL, 2016 WL 1687961, at *3-4 (W.D. Wash. April 26, 2016) (attached hereto as **Exhibit 2**). To date, no appellate court has confirmed the *Helde* decision's reasoning or conclusion.

### *Factual Defense*

28.     Defendant contended that they actively encourage drivers to take breaks and accounts for those breaks in its pay. For the non-union, truckload drivers, the Driver Orientation Manual instructs drivers to "[s]chedule a break every two hours or every 100 miles." Furthermore, the Employee Reference Guide provides that full-time employees receive two paid 15-minute breaks each day, in addition to an unpaid meal period. The CBA applicable to union drivers likewise provides for paid breaks and requires that Road Drivers "will be paid on a mileage basis for miles driven and for time incidental to the performance of job driving duties, including, but not limited to, any rest breaks to which they employee may be entitled…" Additionally, Defendant contended that for long-distance two-person routes, drivers receive per-mile pay both for driving and for non-work "sleeper berth" time. Mileage-paid non-union drivers also receive supplemental "accessorial" pay for a wide variety of non-driving situations, some of which entail non-work time that would qualify as a rest break under Washington law.

### *Preemption Defense*

29.     Defendant asserted that Plaintiffs' claims could be retroactively preempted by the FAAAA of 1994, as amended. Passage of such legislation would result in the class claims being wiped out entirely and the class members obtaining no recovery. Issues related to retroactive preemption first appeared in the 2015 Highway bill called the Denham Amendment; however, the amendment did not make it through the Senate. After the Denham amendment failed, the American Trucking Association, the 50 ATA-affiliated state trucking associations, the National Private Truck Council, the Truckload Carriers Association, and the Truck Renting and Leasing Association placed pressure on the House Committee on Transportation and Infrastructure to include the Denham language in the FAA Reauthorization bill. In addition, on May 17, 2016, the House Appropriations Subcommittee on Transportation, Housing, and Urban Development, and Related

1  Agencies approved the 2017 Transportation, Housing, and Urban Development funding bill which
2  included an amendment of the FAAAA that would preempt state rest and meal break laws
3  retroactive to 1994. Congress recently combined the THUD FAAAA amendment as Section 134
4  H.R. 5394, which is an omnibus federal budget bill to fund the federal government through most of
5  2017.

6       30.    Congress will vote on H.R. 5394 as soon as 2018. The trucking industry has
7  indicated that this is their top legislative agenda item for the coming year.[6] The legislation currently
8  pending in Congress covers the time period at issue in this case because it will retroactively clarify
9  that the 1994 Federal Aviation Authorization Act was intended to nullify state laws those in the
10  present action, and, if passed, would retroactively preempt all claims at issue in this case.[7] Senator
11  Barbara Boxer, who retired in January 2017, spearheaded the effort to deny the inclusion of
12  retroactive preemption in the prior reconciled FAA bill.[8]

13       31.    However, given the legislative agenda of the new Trump administration and its
14  stated objective to eliminate regulations on business, House Republicans and Republican Senators
15  will continue their efforts to pass retroactive preemption in the coming year(s). This risk has
16  significantly increased since after the settlement due to the recent election which put Republicans
17  in majority control of Congress, and the Presidency is in the hands of a Republican as well.
18  Accordingly, even if Plaintiffs were to prevail on class certification and summary judgment or at
19  trial, there is still a significant risk that the putative Class members would be precluded from any
20  recovery on these grounds.

21       32.    Lastly, Defendant argued that to the extent Plaintiffs seek to represent drivers
22  represented by the Teamsters, their claims are governed by the Teamsters CBA and are preempted

---

[6] See, http://www.ccjdigital.com/to-protect-carriers-from-big-payouts-congress-may-stamp-out-state-efforts-to-reform-driver-pay/ ("Major proponents include the American Trucking Association and the Western States Trucking Association, both of whom have said legislation to assert federal authority over break and pay laws for truckers is a top-level agenda item in the coming years. "This actually is our No. 1 priority," says Western States' head of government affairs Joe Rajkovacz.").

[7] See, https://www.congress.gov/amendment/114th-congress/house-amendment/794/text

[8] http://thehill.com/policy/transportation/270740-dem-senator-slams-trucking-poison-pill-in-faa-bill

DECLARATION OF CRAIG J. ACKERMANN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - CASE NO.: 2:17-CV-0196-TOR

by Section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §185. Section 301(a) authorizes federal courts to hear "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." The Supreme Court has constructed that provision not merely as a grant of jurisdiction but as a "mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). Moreover, the Court has held that Section 301 has a "preemptive force" that is "so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983).

### Class Certification Defense

33.    Defendant contends that Plaintiffs will likely be unable to certify the class they seek to represent. Specifically, Defendant states that there would be conspicuous adequacy and typicality problems with respect to plaintiffs' attempt to represent the interests of Teamsters-represented putative class members. Moreover, there is no overlap between the union and non-union work statement, work locations, and supervisions. In addition, recordkeeping practices for the union represented and non-union drivers differ, mostly notably with respect to the Local Drivers, who are paid for miles only occasionally. Because of the numerous differences between the union and non-union populations, Defendant is confident that Plaintiffs will not be able to certify a class that includes the union-represented drivers.

### Double Damages and Prejudgment Interest

34.    Defendant contends that a plaintiff is only entitled to double damages in a wage withholding case if there is no bona fide dispute over the employee's entitlement to wages. *See Ruhl v. ProjectCorps, LLC*, 192 Wn. App. 1041 (2016); *Moore v. Blue Frog Mobile, Inc.*, 153 Wn. App. 1, 9 (2009). Here, Plaintiffs rely on *Demetrio* which did not address the application of WAC 296-126-092(4), which is at issue for double damages. Even if *Demetrio* or *Helde* is deemed to have settled Washington law with respect to liability in this case, foreclosing the possibility of a bona fide dispute over the drivers' entitlement to separate payment for rest periods, they did so

17

DECLARATION OF CRAIG J. ACKERMANN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - CASE NO.: 2:17-CV-0196-TOR

1  prospectively. Thus, Plaintiffs would only have a claim for double damages that starts April 26,

2  2016 (when *Helde* was decided), nearly two years into the Class Period. Even if the Court in this

3  case deemed the issue settled by *Demetrio*, that was case was not decided until July 16, 2015, 14

4  months into the Class Period.

5      35.    Defendant also argued that Plaintiffs cannot recover both prejudgment interest and

6  double damages. *Hill v. Garda CL Nw., Inc.*, 198 Wn. App. 326, 366 (2017) ("[T]he trial court

7  erred by awarding prejudgment interest when the Plaintiffs had recover double damages under

8  RCW 49.52.070."). Indeed, it may be that Plaintiffs will not be able to recover prejudgment interest

9  merely because they have sought double damages. *See id.* at 365 n.42 ("Arguably… an award of

10 prejudgment interest is inappropriate when a plaintiffs seeks[] an award of double damages under

11 the statute, regardless of whether the court in fact awards double damages.").

12 **IV.    FAIRNESS, ADEQUACY, AND REASONABLENESS OF SETTLEMENT**

13     36.    Given my experience as an employment and wage and hour litigator, and based on

14 my own investigation and evaluation and consultation with my co-counsel, I believe the proposed

15 Settlement addresses all the allegations of violations of Washington state law by Defendant, and

16 provides adequate monetary relief to Plaintiffs and Class Members.  The estimated 126 Class

17 Members will enjoy substantial monetary relief from the approximately $189,375.50 Net

18 Settlement Amount that will be available for distribution, amounting to an average recovery per

19 class member of nearly $1,502.98[9] In my experience, both amounts are substantial recoveries for

20 class members in a class action involving wage and hour claims, and in particular rest break claims.

21 Furthermore, the average estimated recovery per Class Member compares favorably with other

22 settlement similar cases. In a similar case, *Dale McMakin, Jr. v. Domino's Pizza LLC*, King County

23 Superior Court Case No. 16-2-20655-7 KNT, the Honorable Richard McDermott granted final

24 approval to a settlement on behalf of a class of 45 truck drivers with similar claims on June 2, 2017

25 where the average settlement payment per Class Member was $1,481.83 and the highest estimated

26 settlement payment was $3,156.49. Additionally, in *Aaron Lindholm v. Tate Transportation, Inc.*,

27

28
─────────────
[9] $189,375.50 Net Settlement Amount / 126 Class Members = $1,468.25.

1    Walla Walla County Superior Court Case No. 17-2-00013-3, the Honorable John W. Lohrmann

2    granted final approval to a settlement on behalf of a class of 73 truck drivers with similar claims on

3    June 29, 2017 where the average settlement payment per Class Member was $547.95 and the

4    highest estimated settlement payment was $1,342.98. Lastly, in *Steven Eilerman v. McLane*

5    *Company, Inc. dba McLane/Northwest*, United States District Court, Western District of

6    Washington at Tacoma Case No. 3:16-CV-05303-BHS, the Honorable Benjamin H. Settle granted

7    final approval to a settlement on behalf of a class of 251 truck drivers with similar claims on May

8    17, 2017 where the average settlement payment per Class Member was $1,914.53 and the highest

9    estimated settlement payment was $4,659.54.

10        37.    In light of the maximum recoverable damages of $391,838.63 for unpaid rest

11   breaks minus doubles damages and interest, I believe that this settlement is an excellent result. The

12   Gross Settlement Amount represents approximately 78% of Class Counsel's estimate of the full

13   value of the class' potential recovery on the claims for unpaid rest breaks excluding double

14   damages and interest.[10] Although the Gross Settlement Amount is only 34.5% of the maximum

15   total damages of $885,555.30[11] (including $493,716.67 in double damages and interest) if Plaintiffs

16   were to prevail on the issues of federal preemption, class certification, all liability determinations,

17   *and* the disputed issue regarding the liability for double damages and prejudgment interest, I

18   believe that the very significant risks in those determinations warrant a discount of that degree from

19   the maximum possible recovery in an "everything goes right" scenario. Significantly, the issue of

20   retroactive federal preemption could render Plaintiffs claims worthless.

21        38.    Considering the significant risks if Plaintiffs had to continue with the litigation, it is

22   my professional opinion, based on my experience, that the Settlement is fair, reasonable, and

23   adequate in light of all known facts and circumstances, including the risks posed by the defenses

24   asserted by Defendant on the merits, the uncertainties regarding class certification, and issues

25   concerning the amount of damages that might be recovered, as well as the potential danger that

26

27   ---

[10] $305,834 Gross Settlement Amount / $391,838.63 in exposure excluding double damages and interest = 78%

28   [11] $305,834 Gross Settlement Amount / $885,555.30 maximum exposure = 34.5%

1  Congress may pass a bill retroactively preempting Washington state law application to truck drivers

2  rendering Plaintiffs' claims worthless.

3  **V.    PROPOSED ENHANCEMENT FEE AWARDS**

4       39.    The proposed Enhancement Awards of $7,500 to each of the Named Plaintiffs

5  ($15,000 total) are fair and reasonable. Plaintiffs were instrumental in prosecuting this lawsuit and

6  were an important source of information during this litigation. Plaintiffs provided invaluable

7  assistance to Class Counsel and the Class in this case, including providing factual background for

8  the proposed mediation and the Complaint; participating in phone calls to discuss litigation and

9  settlement strategy; providing relevant documents; and reviewing the settlement documents.

10 Plaintiffs agreed to participate in this case with no guarantee of personal benefit. Further, Plaintiffs

11 agreed to undertake the financial risk of serving as Class Representatives and exposed themselves

12 to the risk of negative publicity by anyone who opposed this case. Moreover, the requested $7,500

13 Incentive Payments for each of the Named Plaintiffs fall within the range of incentive payments

14 typically awarded to Class Representatives in similar class actions. Defendant does not oppose

15 payment of $7,500 to each of the named Plaintiffs as service awards. The $7,500 Class

16 Representative Service Award to each of the Plaintiffs compare favorably with other Class

17 Representative Service Awards granted final approval. *See, e.g. Pelletz v. Weyerhaeuser Co.*, 592

18 F. Supp. 2d 1322, 2009 U.S. Dist. LEXIS 1803 (W.D. Wash. 2009) (payment of a $7,500 incentive

19 payment to each of the names plaintiff was approved); *Hughes v. Microsoft Corp.,* C98-1646C, 93-

20 0178C, 2001 U.S. Dist. LEXIS 5976, 2001 WL 34089697, at *12-*13 (approving incentive awards

21 of $ 7,500, $ 25,000, and $ 40,000).

22 **VI.    ATTORNEYS' FEES AND COSTS**

23      40.    Plaintiffs' Counsel seek an attorneys' fees award of $76,458.50, or 25% of the

24 common fund created by the settlement in this case, as provided for in the Settlement Agreement.

25 That entire settlement fund is non-reversionary and will be paid out. Defendant does not oppose

26 Plaintiffs' Counsel request of $76,458.50 as an attorneys' fee award.

27      ***Contingent Risk of Case***

28

41.     Class Counsel took this case on a contingency fee basis. Plaintiffs or class members were not obligated to us for any fees, and we advanced all the costs of litigation. Recovery of costs or fees was entirely contingent on a successful outcome to the case. The amount of uncompensated time expended was substantial, and Class counsel's significant financial outlays would have been entirely lost if the case were not won.

42.     Like most complex employment class actions, in this case some of the risks could be assessed at the outset of the case, but others could not be anticipated and developed over the course of the litigation. Such unpredictable factors include, of course, the possibilities of changes or developments in the law, and actions by defendants or defense counsel. In this case, a particularly risk-enhancing factor was that Congress is again considering a law retroactively preempting Washington state's rest break law applicable to Class Members, which would render this case worthless.

43.     The outcome of litigation is inherently uncertain, and the process is typically slow. Thus, even if Plaintiffs to prevail in this case on motions, or at trial, appellate risk and delay could further jeopardize the chance of meaningful recovery for the class. My firm is involved in several cases – both state and federal courts - in which recovery has been delayed for years; and we have also litigated cases where the class obtains nominal or no recovery despite, in my professional opinion, having meritorious claims. In several other cases, even though our clients prevailed they and we recovered much reduced damages and fees, either because of the employer's financial limitations or its insolvency. These factors all had to be considered in our decision to accept the settlement in this case.

### *Application of Standard Measures of Reasonable Fees*

44.     In my professional experience, common fund recoveries are a frequently used basis for awarding successful plaintiffs' attorneys their fees in wage and hour class actions in federal courts. My understanding is that the courts' bases for favoring common-fund awards include (1) fairly compensating the attorneys based on the benefits brought to the class; (2) providing an incentive for counsel to efficiently litigate cases, rather than spend excessive hours to prolong

1   litigation and justify a higher lodestar; (3) provide incentive for settlement, which is particularly

2   preferred in class actions; (4) equitably spreading the attorneys' fees among class members who

3   benefit from their work, at a rate that closely mirrors percentages paid on individual contingency

4   fees cases; and (5) relieving some of the workload on an overtaxed judicial system while still

5   providing fairness to the class through judicial oversight of class settlements.

6          45.     My firm has obtained fees in the range from 30% to 1/3 of the common fund in

7   numerous piece-rate class actions involving truck drivers and farm workers.  On November 12,

8   2015, in the case of *Gonzalez v. SAIA Motor Freight Line LLC*, San Bernardino Case No.,

9   CIVDS1503144, the Honorable Judge Wilfred J. Schneider in Department S32 finally approved a

10  class action settlement for truck drivers that included attorneys' fees at 1/3 of the total settlement

11  amount.  Similarly, on July 30, 2014, in the case of *Anderson v. Andrus Transportation Services*,

12  Case No. CIV DS 915878 (San Bernardino Superior Court), the Honorable Judge Brian McCarville

13  granted final approval to a settlement of a class of truck drivers challenging a piece-rate

14  compensation system with claims for *inter alia* meal and rest breaks, and unpaid wages for rest

15  breaks, as in the instant case where the fees awarded amounted to 1/3 of the total settlement fund.

16  Furthermore, an attorneys' fee request in the amount of 25% of the Gross Settlement Amount is fair

17  and reasonable considering the Honorable Benjamin Settle in the case of *Eilerman v. McLane*

18  *Company, Inc.*, Case No. 3:16-CV-053-3-BHS (W.D. Wash. May 17, 2017), Docket No. 57 (Order

19  Granting Final Approval of Class Action Settlement), where the Court awarded attorneys' fees to

20  Plaintiff's counsel in the amount of 30% of the common fund in a trucker piece rate class action for

21  unpaid rest breaks nearly identical to the instant case.

22          ***Overall Opinion of Reasonableness of Requested Fees***

23          46.     In light of the substantial recovery made for the class, reflecting the expertise of

24  class counsel both generally and in light of the particular challenge of this case in particular, the

25  efficiency and skill with which class counsel litigated this case, the risk incurred, and time and cost

26  expended, it is my professional opinion that the requested fee award is also fair to the class.

27          ***Recovery of Litigation Costs***

28

47.    Plaintiff's request for out-of-pocket litigation costs and expenses of no more than $10,000 is also fair and reasonable. Plaintiffs' Counsel have reasonably incurred costs while litigating this case and will continue to incur additional costs throughout the settlement approval process.

## VII.    SETTLEMENT ADMINISTRATOR

48.    The parties propose that the Court appoint Rust Consulting, Inc. to serve as the settlement Administrator. Rust Consulting, Inc. is experienced in administering class action settlements, and has estimated its fees for this settlement, not to exceed $15,000.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on this 9th day of February 2018, in Los Angeles, California.

By:    _____
        Craig Ackermann

# EXHIBIT 1

<u>**SETTLEMENT AGREEMENT**</u>

Subject to the approval of the United States District Court for the Eastern District of Washington, Plaintiffs Christopher A. Santamour and John Kelly Peightal, on behalf of themselves and all Class Members, as defined herein, and Defendant UPS Ground Freight, Inc., agree to the terms of this settlement agreement and release (the "Settlement").

## I.   <u>DEFINITIONS</u>

For the purposes of the Settlement, words or phrases that are presented in initial capital letters (e.g., Class Member) are defined as follows:

1.      "Action" shall mean *SANTAMOUR v. UPS GROUND FREIGHT, INC.,* pending in the United States District Court for the Eastern District of Washington as Case No. 2:17-CV-00196-TOR.  The Action was filed on May 12, 2017, in Spokane County Superior Court (Spokane County Superior Court Case No. 17-2-01766-8), and was removed to the United States District Court for the Eastern District of Washington on June 5, 2017.

2.      "Check Cashing Period" shall mean the 90-day period commencing the date on which the Settlement Proceeds are mailed to Participating Class Members.  After the 90-day Check Cashing Period, any uncashed proceeds shall be dispersed as set forth in paragraph 43, below.

3.      "Class Counsel" shall mean Craig Ackermann and Ackermann & Tilajef, P.C. and India Lin Bodien, Attorney at Law.

4.      "Class Member" shall mean any individual who is a member of the Settlement Class.

5.      "Class Representatives" and "Plaintiffs" shall mean Christopher A. Santamour and John Kelly Peightal—the individuals identified as named Plaintiffs in the Complaint.

Page **1** of **22**
SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.

138188609.1

6.      "Class Period" shall mean the period from May 12, 2014 through February 3, 2018.

7.      "Court" shall mean the U.S. District Court for the Eastern District of Washington.

8.      "Defendant," "UPS Freight" or the "Company" shall mean UPS Ground Freight, Inc.

9.      "Fairness Hearing" shall mean the Court hearing to consider any objections to, and the motion for final approval of, the Settlement.

10.      "Final Judgment" shall mean the order granting final approval of the class action settlement entered by the Court.

11.      "Gross Settlement Amount" shall mean the all-inclusive settlement amount of $305,834.00 that Defendant will be obligated to pay in connection with the Settlement.  From the Gross Settlement Amount will be deducted all costs associated with the Settlement, including: Plaintiffs' Class Representative Payments; Class Counsels' attorneys' fees and expenses (including all attorneys' fees and expenses incurred to date and to be incurred in documenting the Settlement, securing trial and appellate court approval of the Settlement, attending to the administration of the Settlement, and obtaining a dismissal of the Action); and the Settlement Administrator's fees and expenses.  The amount remaining in the Gross Settlement Amount after all applicable deductions shall be referred to as the "Settlement Proceeds." All Individual Settlement Payments, plus both employee and employer shares of payroll taxes associated with Individual Settlement Payments, will be paid from the Settlement Proceeds. Upon the occurrence of the Settlement Effective Date, the Gross Settlement Amount will be paid by Defendant in accordance with the terms of this Settlement.  There shall be no reversion of funds from the Gross Settlement Amount to Defendant.

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.

138188609.1

12.     "Individual Settlement Payment" shall mean the Settlement Proceeds allocated to an individual Participating Class Member.  Individual Settlement Payment amounts will be determined based on the Participating Class Member's Proportionate Share of the Settlement Proceeds and shall be subject to employer and employee payroll tax deductions, as detailed in paragraph 41, below.

13.     "Mileage Pay" shall mean compensation paid to truck drivers on a per-mile basis, as distinguished from, for example, hourly, task-based, or "accessorial" pay.  Mileage Pay includes both single-driver Mileage Pay ("FDMP") and team-driver Mileage Pay ("SLMP"). SLMP includes compensation for sleeper berth time, and "Adjusted SLMP" deletes sleeper berth time.

14.     "Notice" shall mean the Notice of Class Action Settlement, attached hereto as Exhibit A, which (subject to Court approval) the Settlement Administrator will mail to each Class Member.

15.     "Participating Class Members" shall mean all Class Members other than those who timely and properly elect not to participate in the Settlement by submitting a written and valid Request for Exclusion.

16.     "Parties" shall mean Plaintiffs and Defendant, and "Party" shall mean any one of the Parties.

17.     "Proportionate Share" shall mean each Class Member's proportionate share of the Settlement Proceeds (before employer and employee payroll taxes), calculated as a percentage, as described in greater detail in paragraph 41, below.

18.     "Request for Exclusion" refers to the process by which a Class Member must timely and properly submit a written notice to the Settlement Administrator to exclude himself or

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.

138188609.1

herself from the Settlement, as well as to prevent the release of his/her claims raised in this Action.

19.    "Settlement" shall mean this settlement agreement between the Parties, which, with Court approval, is intended to provide the terms relevant to the resolution of the Action with regard to all Participating Class Members.

20.    "Settlement Administrator" shall mean Rust Consulting, whom the Parties have selected to perform the duties set forth in this Settlement, subject to the Court's approval.

21.    "Settlement Class" shall mean all individuals who, during the Class Period, (a) resided in Washington State, (b) were employed by UPS Ground Freight, Inc., in the position of truck driver or any similar positions, (c) drove at least one route of three or more hours within Washington State, and (d) were paid on a "per-mile" basis by means of Mileage Pay.  As of November 2017, the proposed Settlement Class had approximately 126 members.

22.    "Settlement Effective Date" shall mean the date immediately after the first date by which all of the following have occurred: (a) the Court has granted final approval of the Settlement and entered Final Judgment consistent with its terms; and (b) (i) the deadline for seeking appellate review of the Final Judgment has passed without a timely appeal or a request for review having been made, or (ii) in the event of an appeal or request for review, the last appellate court to consider the case has rendered a final decision dismissing the appeal and affirming the Final Approval of the Settlement and Final Judgment without material modification, and the applicable deadline for seeking further appellate review has passed.

23.    "Settlement Proceeds" shall have the meaning described in "Gross Settlement Amount," above.

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.

138188609.1

24.    "Share Form" is the form attached to the Notice, which states the recipient's Proportionate Share of the estimated Settlement Proceeds and describes the process by which Class Members can challenge their Proportionate Share.

## II.    RECITALS

25.    On May 12, 2017, Plaintiffs commenced the Action on behalf of themselves and all others allegedly similarly situated with respect to the claims asserted.

26.    Soon after, the Parties, through their attorneys, engaged in informal discussions regarding the matter.

27.    In June 2017, the parties agreed to engage in settlement discussions and to attend a private mediation.   The parties agreed to an informal exchange of information to facilitate mediation.

28.    On August 16, 2017, the parties filed a Joint Status Report and Discovery Plan that informed the Court that the Parties had agreed to a private mediation to take place on November 9, 2017, and suggested postponing case deadlines until after the mediation.

29.    Prior to the mediation, Plaintiffs requested and Defendant provided extensive documents and data bearing on the putative class claims, including personnel files, wage statements, driver logs, pay charts, lists of putative class members, Mileage Pay data, driver and employee manuals, and collective bargaining agreements.

30.    On November 9, 2017, the Parties engaged in a full-day, private, arm's-length mediation, in San Francisco, California before mediator David A. Rotman.  Mr. Rotman is an experienced class action mediator with extensive knowledge of wage and hour laws.  At the mediation, the Parties agreed to settle the Action and signed a Memorandum of Understanding ("MOU") that reflected that agreement and provided for the preparation of a formal settlement

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.
138188609.1

agreement.  This Settlement formalizes the Parties' agreements and supersedes the MOU, which upon execution of this Settlement is void and shall have no further effect.

31.    Defendant denies any liability or wrongdoing of any kind associated with the claims alleged and contends that, for any purpose other than this Settlement, the Action is not appropriate for class treatment under Washington CR 23, Rule 23 of the Federal Rules of Civil Procedure, or otherwise.   The Parties agree, however, that it is appropriate to certify the class for purposes of this Settlement only.

32.    Class Counsel represent that they have conducted a thorough investigation into the facts of this Action and have diligently pursued an investigation of the Class Members' claims against Defendant, including engaging in pre-mediation investigation, reviewing substantial data and documents, and researching the applicable law and potential defenses. Based on their own independent investigation and evaluation, Class Counsel are of the opinion that the Settlement is fair, reasonable and adequate and is in the best interests of Class Members in light of all known facts and circumstances, including the risk of protracted litigation, the risk that the Court would not certify a class action, and Defendant's defenses and potential appellate issues.

33.    Defendant agrees that the Settlement is fair, reasonable and adequate under the circumstances, taking into account litigation risks and costs of defense.

34.    This Settlement represents a compromise of materially disputed claims.  Nothing in this Settlement is intended or will be construed as an admission by Defendant that Plaintiffs' claims in the Action have merit or that Defendant has any liability to Plaintiffs or the Class Members on those claims.

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.

138188609.1

35.     The entry of Final Judgment in this action shall dismiss with prejudice all claims set forth in the Action, provided that it will also state that the Court retains jurisdiction to enforce the terms of the Settlement.

## III.    TERMS OF SETTLEMENT

36.     The Parties agree that, solely for the purpose of implementing the terms of this Settlement, the Court should certify the Settlement Class, should appoint Plaintiffs as Class Representatives for the Settlement Class, should appoint Plaintiffs' counsel as Class Counsel for the Settlement Class, and should appoint a Settlement Administrator to administer the Notice and distribution of the Gross Settlement Amount.

37.     Gross Settlement Amount:  As consideration for the releases described in Section VI, below, dismissal of the Action with prejudice, and the other terms and conditions of this Settlement, Defendant will transfer the Gross Settlement Amount of Three Hundred and Five Thousand Eight Hundred and Thirty-Four Dollars ($305,834.00) to the Settlement Administrator within fourteen (14) calendar days following the Settlement Effective Date.  At the same time, Defendant shall provide the Settlement Administrator with Social Security Numbers for all Participating Class Members.  The Gross Settlement Amount shall be "all inclusive," meaning that all Class Counsel attorneys' fees and costs, all Class Representative Payments, all Settlement Administrator fees and expenses, and all Settlement Proceeds (including all Individual Settlement Payments and all of both Defendant's and Participating Class Members' shares of payroll taxes on the Individual Settlement Payments) shall be distributed from the Gross Settlement Amount.  Notwithstanding any other provision of this Settlement, in no event shall Defendant be obligated to pay more than $305,834.00 in total for the settlement of the Action.

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.
138188609.1

38.   <u>Class Counsel's Attorneys' Fees and Costs</u>:  Defendant will not oppose Class Counsel's request to the Court for approval of an award of attorneys' fees in an amount that does not exceed twenty-five percent (25%) of the Gross Settlement Amount, plus up to $10,000.00 in litigation costs, to be paid by the Settlement Administrator from the Gross Settlement Amount. Class Counsel will provide the Settlement Administrator with their taxpayer ID numbers, and the Settlement Administrator will issue Form 1099s with respect to any payments to Class Counsel for attorneys' fees and costs.

39.   <u>Class Representative Payments</u>:  Defendant will not oppose Plaintiffs' application to the Court for an award of Class Representative Payments not to exceed $7,500 each, or $15,000 total for both Class Representatives, to be paid out of the Gross Settlement Amount, in addition to their Individual Settlement Payments.  The Settlement Administrator will issue to the Class Representatives Form 1099s with respect to their Class Representative Payments.

40.   Settlement Administrator Expenses:  The Parties will ask the Court to approve payment of all Settlement Administrator fees and expenses, not to exceed $15,000, from the Gross Settlement Amount.

41.   <u>Settlement Proceeds</u>:  If the Court approves payment of Class Counsel attorneys' fees and costs, Class Representative Payments, and Settlement Administrator fees and expenses as described above, the Settlement Proceeds will equal $189,375.50.  Distribution of the Settlement Proceeds shall be made by the Settlement Administrator as follows:

(a)   Each Participating Class Member will be entitled to his or her Proportionate Share of the Settlement Proceeds.  Class Members who opt out of the Settlement will not receive any part of the Settlement Proceeds.  Proportionate Shares shall be calculated based on the Participating Class Member's combined FDMP and Adjusted SLMP during the Class Period as a percentage of all Participating Class

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.

138188609.1

Members' combined FDMP and Adjusted SLMP during the Class Period, as reflected in data provided to the Settlement Administrator by Defendant.

(b)      Seventy percent (70%) of each Individual Settlement Payment will be treated as wages for federal and state tax purposes, will be subject to all required employer and employee payroll taxes (both of which will be deducted from the Individual Settlement Payment amount), and will be reported on a Form W-2.  The remaining thirty percent (30%) of each Individual Settlement Payment will be designated a non-wage payment in lieu of interest and any non-wage damages and will be reflected on a Form 1099. The W-2s and 1099s will be prepared by the Settlement Administrator, who will also be responsible for deducting and forwarding employer and employee payroll tax amounts on the Individual Settlement Payments to the relevant taxing authorities.

42.    Settlement Payment Date:  Within thirty (30) calendar days after the Settlement Effective Date, the Settlement Administrator shall mail the Individual Settlement Payments (less applicable deductions) to eligible Participating Class Members; make payment of Court approved attorneys' fees and costs to Class Counsel; and make payment of the Class Representative Payments approved by the Court.

43.    Checks Cashed Process:  If any Participating Class Members do not cash their Individual Settlement Payment checks within the 90-day Check Cashing Period, any amounts associated with those uncashed checks will be sent by the Settlement Administrator to the State of Washington with the associated name of the Class Member pursuant to Washington's Unclaimed Property Act (RCW 63.29, *et seq*.).

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.

138188609.1

## IV.    NOTICE TO THE CLASS MEMBERS

44.    Within thirty (30) calendar days after the Court's entry of its order granting preliminary approval of the Settlement, Defendant will provide the Settlement Administrator and Class Counsel with the following information from its business records:  the names and last known addresses for each Class Member, plus Mileage Pay data needed to calculate each Class Member's Proportionate Share of Settlement Proceeds.    Class Counsel shall use the class list for no other purpose than monitoring the Settlement.

45.    The Settlement Administrator shall send the Notice, which includes the Share Form, to the Class Members, in the form attached as Exhibit A, by first class mail within forty-five (45) days after the Court grants preliminary approval of the Settlement.

46.    The Settlement Administrator will use reasonable tracing to verify the accuracy of the addresses before the initial mailing to ensure that the Notice is sent to Class Members at the addresses most likely to result in prompt receipt.  It will be conclusively presumed that if an envelope so mailed has not been returned within thirty (30) days of the mailing that the Class Member received the Notice.  With respect to envelopes returned as undeliverable, the Settlement Administrator will use reasonable diligence to obtain a current address and re-mail the envelope to such address.  Defendant will provide the Settlement Administrator with additional information from its records, as needed, to facilitate this effort.

47.    Class Counsel shall provide the Court, at least seven (7) business days prior to the Fairness Hearing, a declaration by the Settlement Administrator specifying the due diligence it has undertaken with regard to the mailing of the Notice.

## V.    PROCESS FOLLOWING CLASS NOTICE DISSEMINATION

48.    The Share Forms distributed to Class Members will list the recipient's estimated Proportionate Share, as calculated by the Settlement Administrator assuming 100% Class

Page **10** of **22**

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.

138188609.1

Member participation in the Settlement.  In the event of a dispute regarding a Class Member's Proportionate Share, Defendant's records will be presumed to be correct, but that presumption may be rebutted by the Class Member's documentary showing.  The Settlement Administrator will resolve all such disputes, and the Settlement Administrator's resolution will be binding on the Parties.

49.     Class Members shall have forty-five (45) calendar days from the mailing of the Notice to submit a written Request for Exclusion, to challenge their Proportionate Share, and/or file an objection to the Settlement with the Settlement Administrator.   In the event of an objection, the Settlement Administrator will serve the Objections on Class Counsel and counsel for Defendants within five (5) business days.  A Class Member who has submitted a valid written Request for Exclusion shall have no standing to object to the Settlement and will not be entitled to be heard at the Final Approval Hearing.

50.     In order to elect not to participate in the Settlement (i.e., opt out), a Class Member must sign and return a written Request for Exclusion, postmarked within forty-five (45) calendar days from the mailing of the Notice.  No Request for Exclusion form will be honored if postmarked after this deadline.  To be valid, the Request for Exclusion must be written and contain the following:  the Class Member's name, address, and signature, and the statement "I wish to be excluded from the Settlement in the case of *Santamour v. UPS Ground Freight, Inc.*"

51.     All challenges to the Proportionate Share calculations and Requests for Exclusion shall be sent directly to the Settlement Administrator at the address indicated on the Notice.

52.     Within fifty-nine (59) calendar days after the mailing of the Notice (fourteen (14) calendar days after the deadline for submission), the Settlement Administrator will certify jointly to Class Counsel and Defendant's counsel how many written Requests for Exclusions were

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.

timely or untimely submitted.  The Settlement Administrator will also provide a summary of the challenges to Proportionate Shares and its resolution of those challenges.

53.    The Settlement Administrator will timely notify claimants whose objections or Request for Exclusion were untimely or denied for other reasons.

54.    Any Class Member who does not timely submit a valid Request for Exclusion will be bound by the release of claims set forth in Section VI, paragraph 58, of this Settlement, and will receive an Individual Settlement Payment.  Any Class Member who timely submits a valid Request for Exclusion will not be bound by the release of claims set forth in Section VI, paragraph 58, and will not receive an Individual Settlement Payment.

55.    Participating Class Members shall have a period of ninety (90) calendar days after the mailing by the Settlement Administrator to cash or deposit their Individual Settlement Payment checks.  If a Participating Class Member fails to cash or deposit his or her check within this Check Cashing Period, the Settlement Administrator will cancel the check, and distribute the funds pursuant to Washington's Unclaimed Property Act (RCW 63.29, *et seq*.) as set forth in Paragraph 43, herein.

56.    The Settlement Administrator shall be responsible for distributing the payments pursuant to this Settlement.  The Settlement Administrator will submit to Class Counsel for filing with the Court proof of all payments made from the Gross Settlement Amount, and will serve all counsel with a copy of the same, within sixty (60) days following the Settlement Effective Date.

**VI.    <u>RELEASES</u>**

57.    <u>Released Claims by Class Representatives:</u>  In consideration of their awarded Class Representative Payments and the other terms and conditions of the Settlement, and understanding that there is a *bona fide* dispute regarding wages they may be owed, among other

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.

138188609.1

things, Plaintiffs irrevocably release and discharge Defendant and its former and current parents, subsidiaries, and affiliated corporations, and their respective officers, directors, employees, partners, shareholders, agents, insurers, employee benefit plans, and any other successors, assigns, or legal representatives ("Released Parties"), from all known and unknown claims, promises, causes of action, or similar rights of any type that they presently may have with respect to any Released Party  ("Released Claims.")  The Released Claims might arise under different foreign, domestic, national, state, or local laws (including statutes, regulations, other administrative guidance, and common law doctrines), such as federal and state anti-discrimination statutes, and other laws such as those providing recourse for alleged wrongful discharge, tort, personal injury, emotional distress, fraud, negligence, defamation, and similar or related claims, as well as those related to compensation, pay deductions, tax treatment of earnings, wage disputes of any nature (including those pursuant to the Fair Labor Standards Act), penalties, liquidated damages, punitive damages, attorneys' fees, benefits, and family and medical leave rights.  Plaintiffs' release includes, but is not limited to, all claims that were made, or could have been made, against the Released Parties in the Action.  This Release does not release any claims that the law does not permit Plaintiffs to release.  Plaintiffs agree to promptly pay and to indemnify and hold the Released Parties harmless from and against any and all loss, cost, damage or expense, including without limitation, attorneys' fees, interest, assessments, and penalties, arising out of any dispute over the tax treatment of any of the proceeds received by Plaintiffs as a result of this Release.

58.    <u>Released Claims by Class Members</u>:  In consideration of their Individual Settlement Payments and the other terms and conditions of the Settlement, and recognizing that there is a *bona fide* dispute regarding wages owed, among other things, each Participating Class Member (including the named Class Representatives ) will irrevocably release and discharge the Released Parties from any and all claims raised in the Action, and all wage and hour claims

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.
138188609.1

arising from facts alleged in the Action, from May 12, 2014 through February 3, 2018, including but not limited to claims for rest breaks or rest break compensation, liquidated damages flowing from unpaid rest break compensation, and interest, whether founded on state, federal or local law (including the Fair Labor Standards Act), including but not limited to claims under Industrial Welfare Act (Chapter 49.12 RCW), WAC 296-126-092(4), and Chapter 49.52 RCW.  This Release does not release any claims that the law does not permit each Participating Class Member to release.  Each Participating Class Member is responsible for appropriately reporting the proceeds received as a result of this Release on his/her taxes, and agrees to hold the Released Parties harmless with respect to any dispute arising from or related to such reporting.

59.    <u>Additional Attorneys' Fees Released by Class Counsel</u>:  In consideration for their Court-approved attorneys' fees and expenses, Class Counsel waives any and all claims to any further attorneys' fees or costs in connection with the Action.

## VII.    <u>CONFIDENTIALITY</u>

60.    Plaintiffs and Class Counsel agree that they will not issue any press releases, initiate any contact with the press, respond to any press inquiry or have any communication with the press about the Action, or the fact, amount or terms of the Settlement.

61.    Plaintiffs and Class Counsel agree that they will not engage in any advertising or distribute any marketing materials relating to the Settlement that identifies Defendant, including but not limited to any postings on any websites maintained by Class Counsel.  Class Counsel shall be permitted to make reference to the Settlement, without identifying Defendant by name. In connection with submitting declarations concerning adequacy in other cases, Class Counsel may identify the case number, provide a description of the case and resolution, and confirm the fact that they were approved as Class Counsel.

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.

138188609.1

62.     Any communication about the Settlement to Class Members by Class Counsel or Plaintiffs prior to the Court-approved mailing will be limited to a statement that a settlement has been reached and the details will be communicated in a forthcoming Court-approved Notice.

63.     Defendant shall have the right to rescind this Settlement, rendering it null and void, if Plaintiffs or Class Counsel violate the obligations in this Section VII.

## VIII.  NO EFFECT ON OTHER BENEFITS

64.     The Parties agree that the calculations made regarding the Settlement amounts and the pro-ration of the same among the Class Members are for purposes of this Settlement only and do not give rise to any other rights under any benefit plans or otherwise.

65.     Payments under this Settlement shall not be considered compensation under any of Defendant's employee benefit plans.

## IX.   DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

66.     Cooperation:  The Parties and their counsel agree to cooperate and take all steps necessary and appropriate to obtain preliminary and final approval of this Settlement, to effectuate its terms, and to dismiss the Action with prejudice. The Parties further agree that neither they nor their counsel will solicit or otherwise encourage Class Members to object to or request exclusion from the Settlement.

67.     Fair, Reasonable and Adequate Settlement:  The Parties agree that the Settlement is fair, reasonable and adequate and will so represent to the Court.

68.     Unopposed Motion for Preliminary Approval of Settlement:  Class Counsel will move the Court for an Order Granting Preliminary Approval of the Settlement and Notice in a form to be approved by Defendant, which shall include the following elements:

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.

138188609.1

(a)     Setting a date for a fairness hearing on the question whether the proposed Settlement should be finally approved as fair, reasonable and adequate as to the Class;

(b)     Approving as to form, content and distribution of the proposed Notice;

(c)     Directing the mailing of the Notice to the Class Members;

(d)     Preliminarily approving the Settlement;

(e)     Preliminarily certifying a class consisting of Plaintiffs and Class Members for purposes of Settlement only;

(f)     Approving Craig Ackermann, India Bodien, and their respective law firms, as Class Counsel for Settlement only; and

(g)     Approving Rust Consulting or another administrator agreed to by the Parties as the Settlement Administrator.

## X.    DUTIES OF THE PARTIES FOLLOWING FINAL COURT APPROVAL

69.     Following final approval of the Settlement by the Court, Class Counsel will submit a proposed Final Judgment in a form approved by Defendant, which shall include the following elements:

(a)     Certifying a Settlement Class consisting of Plaintiffs and Participating Class Members for purposes of Settlement only;

(b)     Approving the Settlement, adjudging the terms to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

(c)     Approving the Class Representative Payments to Plaintiffs;

(d)     Approving the payment of attorneys' fees and expenses to Class Counsel;

(e)     Approving payment of the Settlement Administrator's fees and expenses;

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.

138188609.1

(f)      Approving distribution of the Settlement Proceeds among the Participating Class Members; and

(g)      Dismissing the Action on the merits and with prejudice and permanently barring all Participating Class Members and Plaintiffs from prosecuting any and all Released Claims set forth above.

## XI.    PARTIES' AUTHORITY

70.      The respective signatories to the Settlement represent that they are fully authorized to enter into this Settlement and bind the respective Parties to its terms and conditions.

## XII.    MUTUAL FULL COOPERATION

71.      The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Settlement.  The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the terms of this Settlement.  As soon as practicable after execution of this Settlement, Class Counsel shall, with the cooperation of Defendant and its counsel, take all steps necessary to secure the Court's Final Judgment.

## XIII.    NO PRIOR ASSIGNMENTS

72.      The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right released and discharged in this Settlement.

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.

138188609.1

## XIV.   <u>NO ADMISSION</u>

73.     Nothing contained in this Settlement shall be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant.  Defendant denies any such liability.  Each of the Parties has entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

74.     This Settlement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce its terms.

## XV.   <u>ENFORCEMENT ACTIONS</u>

75.     In the event that one or more of the Parties institutes any legal action against any other party or Parties to enforce the provisions of this Settlement or to declare rights and/or obligations under this Settlement, the successful party or Parties shall be entitled to recover from the unsuccessful party or Parties reasonable attorneys' fees and costs, including expert witness fees and costs incurred in connection with any enforcement actions.

## XVI.  <u>NOTICES</u>

76.     Unless otherwise specifically provided, all notices, demands or other communications shall be in writing and shall be deemed to have been duly given as of the fifth (5th) business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

<u>To the Class</u>:
Craig Ackermann, Esq.
Ackermann & Tilajef, P.C.
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035

India Lin Bodien, Esq.
India Lin Bodien, Attorney at Law
2522 North Proctor Street, #387

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al. v. UPS GROUND FREIGHT, INC.

138188609.1

Tacoma, Washington 98406

To Defendant:
Charles N. Eberhardt, Esq.
Perkins Coie LLP
The PSE Building
10885 NE Fourth Street, Suite 700
Bellevue, Washington 98004-5579

## XVII. **VOIDING THE AGREEMENT**

77.     If this Settlement is not approved, or if the Court's Final Judgment is materially modified on appeal, then this Settlement will become null and void, no payment under this Settlement will be made, and the Settlement shall not be used nor be admissible in any subsequent proceeding either in this Court or in any other Court or forum, nor shall there be any certification of the Settlement Class, as it is being requested here solely for the purposes of this Settlement.  If there is any reduction in the attorneys' fee award and/or costs requested, such reduction may be appealed as set forth below but is not a basis for rendering the Settlement voidable and unenforceable.

## XVIII. **CONSTRUCTION**

78.     The Parties agree that the terms and conditions of this Settlement are the result of intensive arm's-length negotiations between the Parties and that this Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his, her or its counsel participated in the drafting of this Settlement.

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al., v. UPS GROUND FREIGHT, INC.

138188609.1

## XIX.   CAPTIONS AND INTERPRETATIONS

79.     Paragraph titles or captions contained in this Settlement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision.  Each term of this Settlement is contractual and not merely a recital.

## XX.   MODIFICATION

80.     This Settlement may not be changed, altered, or modified, except in writing and signed by the Parties, and approved by the Court.

## XXI.   INTEGRATION CLAUSE

81.     This Settlement contains the entire agreement between the Parties, and, once it is fully executed, all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, relating to the resolution of the Action, are merged in this Settlement.  No rights under this Settlement may be waived except in writing.

## XXII.   BINDING ON ASSIGNS

82.     This Settlement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

## XXIII.   CLASS COUNSEL SIGNATORIES

83.     It is agreed that it is impossible or impractical to have each Class Member execute this Settlement.  The Notice will advise all Class Members of the binding nature of the release. Excepting only the Class Members who timely submit a Request for Exclusion, the Notice shall have the same force and effect as if this Settlement were executed by each Class Member with regard to the Release of Claims recited in Section VI, paragraph 58.

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al., v. UPS GROUND FREIGHT, INC.

138188609.1

## XXIV.  COUNTERPARTS

84.     This Settlement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties.

## XXV.  RIGHT OF APPEAL

85.     The Parties agree to waive all appeals from the Court's Final Judgment of this Settlement, unless the Court materially modifies the Settlement; provided, however, that Plaintiffs may appeal any reduction in the requested amount of attorneys' fees and/or costs, or Class Representative Payments.

## XXVI.  CLASS CERTIFICATION

86.     The Parties agree that the stipulation of class certification is for the purposes of this Settlement only and if for any reason the Settlement is not approved, the Settlement will be of no force or effect, the class will not be certified and no payment will be made.  The Parties agree that certification for settlement purposes is in no way an admission that class certification is proper and that evidence of this stipulation for settlement purposes only will not be deemed admissible in this or any other proceeding.

## XXVII.  RIGHT OF REVOCATION

87.     In the event that ten percent (10%) of more of the Class Members request exclusion from the Settlement, Defendant has the right to void the Settlement in its entirety by providing written notice to Class Counsel prior to entry of Final Judgment.

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al., v. UPS GROUND FREIGHT, INC.

138188609.1

## COUNSEL FOR THE PARTIES

DATED: January 22, 2018

By: _____

CHARLES N. EBERHARDT, ESQ.
Attorneys for Defendant UPS GROUND FREIGHT, INC.

DATED: January ___, 2018

ACKERMANN & TILAJEF, P.C.

By: _____

CRAIG ACKERMANN, ESQ.
Attorneys for Plaintiffs CHRIS A. SANTAMOUR and JOHN KELLY PEIGHTAL.

INDIA LIN BODIEN, ATTORNEY AT LAW

DATED: January 22 2018

By: _____

INDIA LIN BODIEN, ESQ.
Attorneys for Plaintiffs CHRIS A. SANTAMOUR and JOHN KELLY PEIGHTAL.

**PARTIES**

By: _____

CHRIS A. SANTAMOUR
PLAINTIFF

DATED: January 23, 2018

DATED: January 27 2018

By: _____

JOHN KELLY PEIGHTAL
PLAINTIFF

DATED: January ___, 2018

By: _____

UPS GROUND FREIGHT, INC.
DEFENDANT

Page **22** of **22**

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al., v. UPS GROUND FREIGHT, INC.

138188609.1

## COUNSEL FOR THE PARTIES

DATED: January __, 2018

By:_____
    CHARLES N. EBERHARDT, ESQ.
    Attorneys for Defendant UPS GROUND FREIGHT,
    INC.

DATED: January __, 2018    ACKERMANN & TILAJEF, P.C.

By:_____
    CRAIG ACKERMANN, ESQ.
    Attorneys for Plaintiffs CHRIS A. SANTAMOUR and
    JOHN KELLY PEIGHTAL.

    INDIA LIN BODIEN, ATTORNEY AT LAW

DATED: January __, 2018    By:_____
    INDIA LIN BODIEN, ESQ.
    Attorneys for Plaintiffs CHRIS A. SANTAMOUR and
    JOHN KELLY PEIGHTAL.

## PARTIES

DATED: January __, 2018    By:_____
    CHRIS A. SANTAMOUR
    PLAINTIFF

DATED: January __, 2018    By:_____
    JOHN KELLY PEIGHTAL
    PLAINTIFF

DATED: January 19, 2018    By:_____
    UPS GROUND FREIGHT, INC.
    DEFENDANT

SETTLEMENT AGREEMENT
CHRISTOPHER SANTAMOUR, et al., v. UPS GROUND FREIGHT, INC.

138188609.1

# EXHIBIT A

EXHIBIT A___

Questions?  Call the Settlement Administrator Toll Free at 1-8xx-xxxx

# NOTICE OF CLASS ACTION SETTLEMENT

## THIS NOTICE MAY AFFECT YOUR RIGHTS PLEASE READ IT CAREFULLY

## I.    WHY SHOULD I READ THIS NOTICE?

The purpose of this Notice is to inform you of the potential resolution of a class action lawsuit that may affect you.  The lawsuit is called *SANTAMOUR v. UPS GROUND FREIGHT, INC.* and is pending in the United States District Court for the Eastern District of Washington as Case No. 2:17-CV-00196-TOR (the "Action").

The Action was filed by two former employees of UPS Ground Freight, Inc. ("UPS Freight"), Chris Santamour and John Peightal (known as the "Plaintiffs").  They allege that UPS Freight did not comply with Washington wage and hour law with respect to rest breaks. Specifically, the Action contains two causes of action: (1) failure to pay per-mile drivers separate wages for time spent on statutory rest periods; and (2) double damages flowing from the first cause of action. UPS Freight denies all wrongdoing.  UPS Freight maintains that it complied with applicable law and that its employees have been fully paid all wages due.  The Court has not expressed any opinion as to the validity of the claims raised in this case.

The parties have agreed to settle the Action on behalf of a "Settlement Class" of current and former employees who, at any time from May 12, 2014 through February 3, 2018 (the "Class Period"): (1) resided in Washington State, (2) were employed by UPS Freight in the position of truck driver or any similar position, (3) drove at least one route of three hours or more within Washington State, and (4) were paid on a "per-mile" basis (also called "Mileage Pay").

On _____, 2018, the Court issued an order preliminarily approving the parties' agreement (known as the "Settlement"), certifying the Action as a "class action" for settlement purposes, and approving this Notice.  You received this Notice because UPS Freight records indicate that you are a member of the Settlement Class (also called a "Class Member").

## II.    WHAT WILL I RECEIVE FROM THE SETTLEMENT?

The following are aspects of the Settlement were preliminarily approved by the Court:

- UPS Freight will pay a Gross Settlement Amount of $305,834.00, to settle all claims in the Action on behalf of Plaintiffs and the Settlement Class.  This amount shall be "all inclusive," meaning that all attorneys' fees and costs, settlement administration expenses, and payments to Plaintiffs and Participating Class Members (i.e., those members of the Settlement Class who do not submit a request to be excluded from the Settlement), and associated payroll taxes, will be paid from the Gross Settlement Amount.

- The parties have agreed that, subject to Court approval, the following payments will be made from the Gross Settlement Amount:

Page **1** of **7**

EXHIBIT A___

**Questions?  Call the Settlement Administrator Toll Free at 1-8xx-xxxx**

> o   Class Counsel will be paid up to 25% of the Gross Settlement Amount for attorneys' fees and will, in addition, be reimbursed up $10,000 for litigation costs.
>
> o   Plaintiffs will each receive a service payment of up to $7,500 each ($15,000 total).
>
> o   The Court-appointed Settlement Administrator will be reimbursed for Settlement administration costs up to $15,000.
>
> o   The balance of the Gross Settlement Amount (the "Settlement Proceeds") will be allocated among Participating Class Members.

- The Settlement Proceeds (estimated to be $189,375.50) will be distributed to Participating Class Members based on the formula discussed below.

- All Participating Class Members will release UPS Freight from any and all liability for claims asserted in the Action as described in Section III.A., below.

- Participating Class Members will receive a Settlement payment.  The amount of each individual's Settlement payment will be based on their "Proportionate Share" of the Settlement Proceeds, which are calculated based on their Mileage Pay (specifically, their combined FDMP and SLMP, adjusted for sleeper berth time) during the Class Period as a percentage of all Participating Class Members' Mileage Pay (combined FDMP and SLMP, adjusted for sleeper berth time) during the Class Period.  Information that will be used to calculate your Settlement payment is set forth on the Share Form included with this Class Notice.

- Seventy percent (70%) of each individual Settlement payment will be treated as wages, will be subject to all required employer and employee payroll taxes (both of which will be deducted from the individual Settlement payment amount), and will be reported on a Form W-2.  The other thirty percent (30%) will be designated as payment for interest and non-wage damages and reported on a Form 1099.  Participating Class Members are encouraged to seek independent advice regarding the tax consequences of their Settlement payment.

- No employee benefit shall increase or accrue as a result of any payment made in connection with this Settlement.

## III.   WHAT IS THE EFFECT OF THE SETTLEMENT?

### A.   Released Claims By Class Members

All Participating Class Members will irrevocably release and discharge UPS Freight and its former and current parents, subsidiaries, and affiliated corporations, and their respective officers, directors, employees, partners, shareholders, agents, insurers, employee benefit plans, and any other successors, assigns, or legal representatives ("Released Parties"), from any and all claims

NOTICE OF SETTLEMENT
CHRISTOPHER SANTAMOUR, ET. AL., v. UPS GROUND FREIGHT, INC.
138106163.1

EXHIBIT A___

**Questions?  Call the Settlement Administrator Toll Free at 1-8xx-xxxx**

raised in the Action, and all wage/hour claims arising from the facts alleged in the Action, from May 12, 2014 through February 3, 2018, including, but not limited to, claims for rest breaks or rest break compensation, liquidated damages flowing from unpaid rest break compensation, and interest, whether founded on state, federal or local law (including the Fair Labor Standards Act), including claims under the Industrial Welfare Act (Chapter 49.12 RCW), WAC 296-126-092(4), and Chapter 49.52 RCW.  This release of claims (the "Release") will not release any claims that the law does not permit each Participating Class Member to release. Each Participating Class Member is responsible for appropriately reporting the proceeds received as a result of this Settlement on his/her taxes, and agrees to hold the Released Parties harmless with respect to any dispute or liability arising from or related to such reporting.

The Release will not apply to Class Members who timely submit a valid Request for Exclusion, as described below.  On the other hand, if you are a Class Member and do *not* elect to exclude yourself through a valid and timely submitted written Request for Exclusion, you will be deemed to have entered into and will be bound by this Release when the Settlement becomes effective, even if you take no further action.

### B.      Payment To Participating Class Members.

If you qualify to receive payment under the Settlement, a check will be mailed to you within approximately thirty (30) days after the "Settlement Effective Date," defined as the first date by which all of the following have occurred: (1) the Court has granted final approval of the Settlement and had entered a final judgment consistent with its terms, and (2)(a) the deadline for appealing the final approval of the Settlement and final judgment has passed and no appeal is filed, or (b) if there is an appeal, all appeals are complete and the appellate courts have affirmed the decision approving the Settlement and final judgment.

## IV.    WHAT ARE MY RIGHTS?

### A.      You May Participate In The Settlement.

If you wish to participate in the Settlement, you do not need to do anything at this time.  Please update the Settlement Administrator if your address or phone number changes or will change.

### B.      You May Object To The Settlement, Or Any Part Of It.

To object, you must submit a written objection and notice of intention to appear at the Final Approval Hearing to the Settlement Administrator at the below address, on or before _____, 2018:

Claims Administration Center
c/o _____
[Settlement Administrator]
[ADDRESS]

Page **3** of **7**

EXHIBIT A___

Questions?  Call the Settlement Administrator Toll Free at 1-8xx-xxxx

**YOUR OBJECTION WILL BE FILED WITH THE COURT BY COUNSEL FOR THE PARTIES IN THIS CASE. IF THE COURT DENIES YOUR OBJECTION, YOU WILL BE BOUND BY THE TERMS OF THE SETTLEMENT**

### C.    You May Challenge Your Mileage Pay Data.

If you dispute the information set forth in the Share Form, below, return the form with what you contend is the correct information, along with your supporting documentation, to the Settlement Administrator at the address above no later than _____, 2018.  *Note: the reason why sleeper berth mileage pay was excluded is that the parties agreed that drivers are not entitled to rest breaks, or pay for rest breaks, while they are asleep.*

### D.    You May Exclude Yourself From This Case.

If you wish to be excluded from the Settlement Class and from the Settlement (i.e., "opt-out"), you must complete and mail a written Request for Exclusion to the Settlement Administrator. Your Request for Exclusion must be postmarked no later than _____, 2018.  The Request for Exclusion must contain your name, address signature, and the statement, "I wish to be excluded from the settlement and the case of *Santamour v. UPS Ground Freight, Inc*.," or words to that effect.

If you timely request exclusion from the class, you will (1) be excluded from the Settlement Class; (2) not be bound by any determination or judgment entered in the Action; (3) not be bound by the Release; (4) not receive a Settlement payment or otherwise share in the Settlement Proceeds; and (5) have the right to prosecute your own lawsuit, so long as it is not otherwise barred for any reason.

### V.    WHO REPRESENTS THE PROPOSED SETTLEMENT CLASS?

### A.    Class Representative.

Plaintiffs Christopher Santamour and John Kelly Peightal are former employees of UPS Freight, who were employed as truck drivers by UPS Freight in Washington State, and are the "Class Representatives."

### B.    Class Counsel.

The Court has approved the following attorneys to be "Class Counsel" for the purpose of representing the interests of the Settlement Class:

Craig J. Ackermann, Esq.
Ackermann & Tilajef, P.C.
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 277-0614
cja@ackermanntilajef.com

NOTICE OF SETTLEMENT
CHRISTOPHER SANTAMOUR, ET. AL., v. UPS GROUND FREIGHT, INC.
138106163.1

EXHIBIT A____

**Questions?  Call the Settlement Administrator Toll Free at 1-8xx-xxxx**

India Lin Bodien, Esq.
India Lin Bodien, Attorney at Law
2522 North Proctor Street, #387
Tacoma, Washington 98406
Telephone: (253) 212-7913
india@indialinbodienlaw.com

You may contact Class Counsel or the Settlement Administrator should you have questions.
**PLEASE DO NOT ADDRESS ANY QUESTIONS TO THE COURT OR TO UPS FREIGHT.**

## VI.    WHAT FEES AND COSTS ARE INVOLVED?

### A.    Attorneys' Fees, Costs and Expenses.

Class Counsel will continue to pay the costs of this litigation.  Those costs will be reimbursed from the Gross Settlement Amount as described elsewhere in these materials, subject to the Court's approval.  Specifically, Class Counsel will ask the Court for an award of attorneys' fees not to exceed 25% of the Gross Settlement Amount, or $76,458.50, and an additional $10,000 in litigation costs.

You are _not_ individually responsible for any of those costs.

### B.    Class Representative Payment.

The Class Representatives will ask the Court to grant them a service payment of $7,500 each ($15,000 total) for their effort on behalf of the Settlement class.  Granting of any service payment is at the Court's discretion.

## VII.    WHAT MUST I DO NOW?

If you want to participate and receive a share of the Settlement, you do not need to do anything.  Please make sure to keep your contact information current by notifying the Settlement Administrator of any changes.  If you dispute your Mileage Pay earned during the Class Period or any other information on your Share Form (attached at this Notice), please complete and return the Share Form by the deadline noted.

**OR**

If you do not want to participate in the Settlement, complete and mail a written Request for Exclusion to the Settlement Administrator, postmarked no later than _____, 2018.

**OR**

File an objection to the Settlement with the Settlement Administrator no later than _____, 2018.

**IF YOU DO NOTHING, YOU WILL BE BOUND BY THE RELEASE OF CLAIMS**

NOTICE OF SETTLEMENT
CHRISTOPHER SANTAMOUR, ET. AL., v. UPS GROUND FREIGHT, INC.
138106163.1

EXHIBIT A____

**Questions?  Call the Settlement Administrator Toll Free at 1-8xx-xxxx**

## VIII.   <u>FINAL APPROVAL HEARING</u>

The Court has set the Final Approval Hearing as follows:

Date:

Time:

Place:

**PLEASE DO NOT ADDRESS ANY QUESTIONS TO THE COURT OR TO UPS FREIGHT**

NOTICE OF SETTLEMENT
CHRISTOPHER SANTAMOUR, ET. AL., v. UPS GROUND FREIGHT, INC.
138106163.1

EXHIBIT A___

**Questions?  Call the Settlement Administrator Toll Free at 1-8xx-xxxx**

## SHARE FORM
**Class Member Mileage Pay Earned and Estimated Settlement**

<<Claim Number>>                          _____

<<Name>>                                   _____

<<Address>>                                _____

<<City>>, <<State>> <<Zip Code>>           _____

UPS Ground Freight, Inc.'s ("UPS Freight") records show that during the Class Period,[1] you were paid the following as a truck driver paid on a "per-mile" piece-rate basis:

| COVERED PERIOD | YOUR EMPLOYMENT |
|---|---|
| **5/12/2014 TO FEBRUARY 3, 2018** | _____ TO _____ |
| **MILEAGE PAY EARNED DURING THE COVERED PERIOD (BOTH FDMP AND SLMP MINUS ANY SLMP EARNED FOR SLEEPER BERTH TIME)** | **YOUR TOTAL MILEAGE PAY EARNED DURING THE CLASS PERIOD (MINUS MILEAGE PAY EARNED FOR SLEEPER BERTH TIME) WAS: _____** |

**BASED ON THIS MILEAGE PAY EARNED DURING THE COVERED PERIOD, YOUR ESTIMATED SHARE OF THE SETTLEMENT PROCEEDS IS: _____ PERCENT.  THIS AMOUNT MAY BE HIGHER OR LOWER BASED ON OPT-OUTS. IT IS ALSO SUBJECT TO REDUCTION FOR ALL EMPLOYER AND EMPLOYEE PAYROLL TAXES ASSOCIATED WITH WAGE PAYMENT AMOUNTS.**

## OPTION TO CHALLENGE

☐ I wish to challenge the employment data listed above.  I have included a written statement setting forth what I believe is the actual Mileage Pay that I earned working for UPS Freight during the Covered Period.  **I recognize that my challenge will not be reviewed without documentary evidence to support my claim.**  I understand that by submitting this challenge, I authorize the Settlement Administrator to review Defendant's records and make a determination based on those records and the records I submit.  I understand that this determination may increase or decrease the amount of my settlement share.  I understand that such determinations are final and binding with no opportunity for further appeal.

Dated: _____          Signed: _____

---

[1] The Class Period is May 12, 2014, through February 3, 2018.

NOTICE OF SETTLEMENT
CHRISTOPHER SANTAMOUR, ET. AL., v. UPS GROUND FREIGHT, INC.
138106163.1

# EXHIBIT 2

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

KEVIN HELDE, *et al.*,

10                              Plaintiffs,

11          v.

KNIGHT TRANSPORTATION, INC.

12                              Defendant.

13

No. C12-0904RSL

ORDER REGARDING NON-DRIVING
TASKS AND REST BREAK CLAIMS

14

15          This matter comes before the Court on "Defendant Knight Transportation, Inc.'s Motion

16   for Partial Summary Judgment" (Dkt. # 145) and "Plaintiffs' Motion for Partial Summary

17   Judgment" (Dkt. # 147). The parties seek a summary determination of whether Knight's

18   compensation system fails to pay drivers for (a) time spent performing non-driving tasks and

19   (b) rest breaks.

20          Summary judgment is appropriate when there is no genuine issue of material fact that

21   would preclude the entry of judgment as a matter of law. The party seeking summary dismissal

22   of the case "bears the initial responsibility of informing the district court of the basis for its

23   motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of

24   materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P.

25   56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the

26   non-moving party fails to designate "specific facts showing that there is a genuine issue for

ORDER REGARDING NON-DRIVING TASKS
AND REST BREAK CLAIMS

1   trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most

2   favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor."

3   Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court

4   must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and

5   legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving

6   party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp.,

7   750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252

8   (1986). The non-moving party may not avoid summary judgment simply by filing an affidavit

9   that disputes its own prior statements or contains nothing more than conclusory allegations

10   unsupported by factual data. See Nelson v. City of Davis, 571 F.3d 924, 927-28 (9th Cir. 2009);

11   Hansen v. U.S., 7 F.3d 137, 138 (9th Cir. 1993). In other words, summary judgment should be

12   granted where the nonmoving party fails to offer evidence from which a reasonable jury could

13   return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th

14   Cir. 2010).

15       Having reviewed the memoranda, declarations, and exhibits submitted by the parties and

16   having heard the arguments of counsel, the Court finds as follows:

17   **A. Non-Driving Tasks**

18       Washington's Minimum Wage Act ("MWA") provides flexibility in negotiating the

19   method and amount of compensation in an employment relationship. For purposes of this

20   motion, as long as the employer pays its employees the equivalent of the minimum wage rate for

21   each hour of work, the parties are free to establish a salary, commission, piece rate, hourly rate,

22   or other system of compensation. WAC 296-128-550. See also Inniss v. Tandy Corp., 141

23   Wn.2d 517, 531 (2000) (upholding employer's choice "not to calculate the regular rate as

24   'hourly rate' but as a ratio of weekly base salary to total hours worked in a workweek. The

25   Washington Minimum Wage Act permits this choice."). Washington regulations specify how the

26

ORDER REGARDING NON-DRIVING TASKS
AND REST BREAK CLAIMS     -2-

1  minimum wage calculation is performed if a compensation scheme other than an hourly wage is

2  used. Pursuant to WAC 296-126-021, if an employee is paid solely by the piece, the wages

3  earned in a week are divided by the total number of hours worked during that period: the

4  resulting wage must be no less than the established minimum wage rate. If an employee earns

5  both piece rate and other forms of compensation, the total wages earned in the week are added

6  together and then divided by the total number of hours worked to determine whether the

7  minimum wage requirement is satisfied. Id. "An employer must pay minimum wage, regardless

8  of any employee agreements to work for less." Wash. DLI Admin. Policy ES.A.5.

9          Plaintiffs are paid predominately on a piece rate basis, with some additional compensation

10  provided for specified tasks. Despite the analytical framework provided by WAC 296-126-021,

11  plaintiffs make no attempt to show that their total wages earned in a week average out to less

12  than the minimum wage. Rather, they argue that Washington law imposes an obligation to pay

13  for each "hour of work," and that, because Knight's piece rate is based on a per-mile calculation,

14  it covers only hours spent driving. Thus, the argument goes, plaintiffs were paid $0.00 per hour

15  for the time spent on non-driving tasks in violation of the minimum wage requirement.

16  Plaintiffs' underlying assumption is faulty: the MWA does not require payment on an hourly

17  basis. Plaintiffs' reliance on references in statutes, regulations, and cases to the payment of

18  wages "per hour" or "for each hour of work" is misplaced. Those references do not mandate that

19  every employer utilize an hourly compensation scheme: as noted above, salaries, commissions,

20  and piece rate systems are all permissible under the MWA. The only relevant limitation is that

21  whatever compensation scheme is agreed upon, it must result in a wage that is the equivalent of

22  the minimum hourly wage. For piece rate workers, WAC 296-126-021 provides for the

23  averaging of all amounts paid in a week over all hours worked in that same period to determine

24

25

26

ORDER REGARDING NON-DRIVING TASKS
AND REST BREAK CLAIMS                    -3-

1    whether the amount paid is equivalent to the minimum wage rate.[1] Having eschewed the

2    analytical framework provided by the governing regulations, plaintiffs have not shown a

3    violation of the MWA with regards to payment for the non-driving tasks.

4        Plaintiffs argue that an averaging methodology is contrary to the remedial purposes of the

5    MWA and leaves employees susceptible to abuse because an unscrupulous employer could

6    "require a driver to spend an uncompensated hour at the end of each day shining the supervisor's

7    shoes so long as the per-mile pay for driving resulted in at least minimum wage for all hours

8    worked when averaged over the week." Dkt. # 149 at 23-24. Chapter 49.46 is not a broad-

9    ranging remedial statute, however. As declared by the legislature, its purpose is to "establish a

10   minimum wage for employees of this state to encourage employment opportunities within the

11   state." RCW 49.46.005. As long as an employee is paid the equivalent of the established

12   minimum wage under the averaging methodology set forth in the regulations, the MWA is

13   satisfied.

14       As for plaintiffs' concerns regarding unscrupulous employers, the MWA is not the only

15   protection available to Washington employees. Under the Wage Rebate Act, an employer is also

16   required to satisfy any wage obligations it assumed through contract. RCW 49.52.050(2). An

17   offer of employment to perform certain services in exchange for specified compensation cannot

18   simply be ignored or changed at the employer's whim without risking significant penalties under

19   RCW 49.52.070. Thus, if the parties negotiated a straight per-mile compensation scheme and

20   Knight then demanded that its drivers accept less per mile and allocate the remainder to non-

21   driving tasks, plaintiffs would have a claim under the Wage Rebate Act. The evidence in this

22   case does not, however, support such a claim. Knight offers employment opportunities through a

23   _____

24         [1] The California cases on which plaintiffs rely are distinguishable on this ground. The California
     Labor Code, unlike the MWA and the Fair Labor Standards Act, does not allow the averaging of all pay
25   received and hours worked in a week to compute the equivalent hourly rate. See Armenta v. Osmose,
     Inc., 135 Cal App.4th 314, 324 (2005).
26

ORDER REGARDING NON-DRIVING TASKS
AND REST BREAK CLAIMS              -4-

1  pre-trip proposal that specifies the compensation for hauling and delivering a load, plus any

2  additional pay associated with activities deemed "non-routine," such as border crossings, extra

3  stops, or the transport of hazardous materials. Although the base compensation for the trip is

4  calculated by multiplying an estimate of the miles driven by the driver's per-mile rate (with an

5  added premium for short hauls), the parties understand that the base amount serves as

6  compensation for various tasks associated with hauling and delivering the load, not simply for

7  driving. There is no evidence that a driver was ever caught unawares that he or she would have

8  to prepare for vehicle inspections, secure the load, refuel, perform maintenance duties, wait a

9  reasonable period for customers to accept deliveries, or fill in paperwork. These aspects of the

10 employment arrangement with Knight were disclosed during orientation, and the pre-trip

11 proposal specified which, if any, non-driving tasks garnered additional compensation. While one

12 could imagine a different system – for example, Knight could hire hourly employees to work at

13 the terminal and perform the loading, maintenance, cleaning, and paperwork duties – there is

14 really no dispute regarding the nature of the arrangement that is offered and accepted when a

15 driver agrees to a load proposal from Knight.

16      Based on the evidence in the record, a reasonable jury could not conclude that Knight

17 failed to pay the equivalent of the established minimum wage rate or deprived its drivers of

18 wages due under their compensation agreement.

19 **B. Rest Breaks**

20      Defendant argues that the same analysis should apply to plaintiffs' claim for paid rest

21 breaks based on Mr. Quast's declaration that the pre-trip proposal included compensation for rest

22 breaks as well as the routine non-driving tasks discussed above. This argument fails on the facts

23 and on the law. Mr. Quast offers no basis on which to conclude that he has personal knowledge

24 regarding whether Knight took Washington State's rest break requirement into consideration

25 when developing its compensation scheme. This requirement, unlike all of the other tasks listed

26

ORDER REGARDING NON-DRIVING TASKS
AND REST BREAK CLAIMS                    -5-

1    by Mr. Quast, is antithetical to the goal of hauling and delivering loads insofar as it mandates a

2    period of inactivity during which no tasks can be performed and no miles can be traversed.

3    There is no reason to presume that either Knight or the drivers *sub silentio* lumped the absence

4    of work in with the operational activities. In addition, the requirement is Washington specific,

5    and there is no indication that Knight's compensation scheme was created or subsequently

6    adjusted with the laws of Washington in mind. Until very recently, Knight took the position that

7    the rest break regulation did not apply to its operations because it was preempted. Mr. Quast's

8    prior declarations suggested that Knight made no provision for the required rest breaks and

9    argued that to do so would reduce a driver's productive time by approximately thirty minutes for

10   each break and would make drivers unavailable to do pickups and deliveries two or three times a

11   day. Decl. of Kevin Quast (Dkt. # 57) at ¶¶ 27-28 and 34. The assertion that Knight's pre-trip

12   proposal included compensation for rest breaks is not supported by admissible evidence and, in

13   fact, is affirmatively disproved by the remainder of the record.

14        Even if Knight's pre-trip offer made clear that the compensation amount included

15   payment for rest breaks, the Washington Supreme Court's decision in Demetrio v. Sakuma Bros.

16   Farms, 183 Wn.2d 649 (2015), would invalidate such an agreement. If an employee is paid by

17   piece rate, the court held that the plain language of WAC 296-131-020(2) and case law applying

18   Washington's labor policies require that employers "pay a wage separate from the piece rate for

19   time spent on rest breaks." Sakuma Bros., 183 Wn.2d at 659. Otherwise, the rest break is not "on

20   the employer's time" because any period of inactivity would be funded out of the wages the

21   employee had already earned by the piece. Such a system would create an economic incentive to

22   skip breaks, since they are in effect unpaid or self-funded.

23        Knight's attempts to distinguish Sakuma Bros. are unavailing. The language that the

24   Supreme Court found compelling – "on the employer's time" – appears in both WAC 296-131-

25   020(2) (which applies to agricultural workers) and WAC 296-126-092(4) (which applies to

26   Knight's employees). In fact, the court noted that WAC 296-131-020(2) was patterned after

ORDER REGARDING NON-DRIVING TASKS
AND REST BREAK CLAIMS                      -6-

1   WAC 296-126-092(4) and relied on a number of cases interpreting the more general rest break

2   regulation to reach its conclusion that rest breaks must be compensated separately from the piece

3   rate. 183 Wn.2d at 656-59. Nor does the fact that Knight's operation arguably involves bigger

4   and fewer "pieces" change the analysis. If rest periods are unpaid or self-funded, there is an

5   incentive to skip them regardless of how few or how many pieces an employee can generate in a

6   day. Skipping rest breaks during the first three days of the week may enable the driver to take an

7   additional assignment toward the end of the week. Any "payment schemes that incentivize

8   missed rest breaks at the expense of the employee's health" are forbidden, an issue that is of

9   particular concern when the employee is at the helm of a large vehicle on the public highways.

10  183 Wn.2d at 658-59. Knight's chosen compensation scheme, far from encouraging employees

11  to take their rest breaks, puts the onus on the employee to self-fund their breaks in violation of

12  Washington law.

13        Finally, WAC 296-126-021 does not compel a different result in this case. Knight reads

14  too much into a single word, "wholly," when it argues that the general rest break regulation

15  cannot be read to compel separate compensation apart from the piece rate because WAC 296-

16  126-021 authorizes employers to pay "wholly" on a commission or piecework basis. If separate,

17  non-piece compensation is required, Knight argues, the word "wholly" would become

18  superfluous because employees would not be paid solely on a piecework basis. The cited

19  regulation explains how one converts a commission or piece rate compensation scheme into the

20  equivalent of an hourly wage. It applies to anyone paid under those schemes, wholly or in part.

21  There is no indication that the agency intended to compel a single payment scheme in any

22  particular instance or to create exemptions from other regulatory requirements simply because a

23  piece rate system is used. More to the point, Sakuma Bros. in no way makes the word "wholly"

24  superfluous. An employee who works less than four hours a day on a piece rate basis will still be

25  paid "wholly" by the piece. Knight's strained interpretation of WAC 296-126-021 as an

26  affirmative bar on separate pay for rest breaks for non-agricultural workers is unreasonable.

ORDER REGARDING NON-DRIVING TASKS
AND REST BREAK CLAIMS                    -7-

1  **C. Retroactive Application**

2      Knight argues that, if Sakuma Bros. applies and it must separately pay its employees for

3  rest breaks, the obligation should not apply retroactively. Under Washington law, the general

4  rule is that a new decision applies retroactively to both the litigants before the court and in

5  subsequent cases. McDevitt v. Harbor View Med. Ctr., 179 Wn.2d 59, 74-75 (2013). A decision

6  will be given only prospective effect in the rare cases where "(1) the decision established a new

7  rule of law that either overruled clear precedent upon which the parties relied or was not clearly

8  foreshadowed, (2) retroactive application would tend to impede the policy objectives of the new

9  rule, and (3) retroactive application would produce a substantially inequitable result." Lunsford

10  v. Saberhagen, 166 Wn.2d 264, 272 (2009) (citing Chevron Oil Co. v. Huson, 404 U.S. 97, 106-

11  07 (1971)).

12      The Court finds that the general rule applies in this case. Sakuma Bros. did not overrule

13  clear precedent regarding the interplay between a piece rate compensation scheme and the rest

14  break requirement. Although one could argue that the outcome in Sakuma Bros. was not clearly

15  foreshadowed, the existing case law regarding rest breaks, as thoroughly discussed by the

16  Supreme Court, was not supportive of Knight's compensation system. Retroactive application of

17  the requirement would in no way impede the policy objectives that drove the Sakuma Bros.

18  decision or WAC 296-126-092(4). As between the employer who created a system where

19  employees self-funded (or skipped) their rest breaks on the one hand and the employees who

20  were deprived of wages they were due on the other, there is no inequity in requiring Knight to

21  pay plaintiffs their back wages.

22

23      For all of the foregoing reasons, defendant's motion for partial summary judgment (Dkt.

24  # 145) is GRANTED in part and DENIED in part and plaintiffs' motion for partial summary

25  judgment (Dkt. # 147) is GRANTED in part and DENIED in part. Plaintiffs have failed to raise

26  a genuine issue of fact regarding their statutory or contractual claims for separate compensation

ORDER REGARDING NON-DRIVING TASKS
AND REST BREAK CLAIMS                    -8-

1   for routine non-driving tasks. That claim is hereby DISMISSED. Defendants have failed to raise

2   a genuine issue of fact regarding their obligation to separately compensate plaintiffs for their rest

3   breaks. Its liability for unpaid rest breaks is therefor established: damages on that claim will be

4   determined at trial.

6       Dated this 26th day of April, 2016.

8                         Robert S. Lasnik

9                         United States District Judge